Hartford,
June, 1841.

Hooker
v.
The New-
Haven and
Northampton
Company.

---

## HOOKER *against* THE NEW-HAVEN AND NORTHAMPTON COMPANY.

A corporation was created, by the legislature of this state, for the purpose of constructing and maintaining a canal within certain *termini*, with all necessary waste-wiers, &c., and providing for the appointment of a board of commissioners, with power to designate the route of the canal, with all the works connected therewith, and to appraise the damages, giving notice to the parties interested. The canal and waste-wiers were constructed under the direction of such commissioners. The water of the canal discharged from one of the waste-wiers, after running through the lands of other persons, flowed upon the land of *H* below, and thereby greatly injured it; but it was found, that the corporation, in thus discharging the water, acted with proper prudence and care. This injury to the plaintiff's land, resulted, not from any act of Providence or unexpected calamity, but from using the waste-wier for the necessary protection of the canal. In an action on the case, brought by *H.* against the corporation, for this injury, it was held, 1. that although it is incident to the sovereignty of every government to take private property for public use, of the necessity or expediency of which the government must judge, the obligation to make compensation is commensurate with the right; 2. that no intent of the legislature to authorize the injury in question was apparent from the charter of incorporation, either by express provision or fair construction; 3. that the approval by the commissioners of this waste-wier, with the other works connected with the canal, did not authorize the defendants to use it, though with prudence and care, to the injury of the plaintiff; 4. that an

injury to land, which deprives the owner of the ordinary use of it, is equivalent to a *taking* of that land; 5. that no compensation having been provided for or made to the plaintiff for the injury sustained, he was entitled, in this action, to recover damages for such injury. [By three judges against two.]

*Hartford,*
*June, 1841.*

Hooker
*v.*
The New-
Haven and
Northampton
Company.

THIS was an action on the case. The declaration, after stating the corporate capacity of the defendants, and their general powers in that capacity, alleged, that ever since the incorporation of the defendants, they have supported and managed said canal, and received the tolls thereof, and are and have been liable to keep said canal and the works connected therewith in good condition and repair, and so that the property of other persons should not be injured, by the works of said canal, or the water flowing therefrom : that on the 1st of *June*, 1836, the plaintiff was, and ever since has been, seised and possessed of a certain piece of land in *Farmington*, containing about $3\frac{1}{2}$ acres, bounded &c. ; and was entitled to the quiet and peaceable possession thereof, without interruption or disturbance from the defendants or any other person : yet that the defendants, neglecting their duty in that respect, had not kept said canal and the works connected therewith, in good condition and repair, but, on the contrary, have kept said canal and a certain waste-wier, one of the works connected therewith, in such bad condition and repair, that, during the time aforesaid, large quantities of water have run from said canal over and through said waste-wier, across the lands lying between said canal and the land of the plaintiff, into and upon said land of the plaintiff, by means whereof great quantities of the soil and herbage on said land of the plaintiff, were washed and carried away, and said land was and is deeply gullied and cut up, so that the plaintiff has entirely lost the use of a great part thereof, and has been and is unable to pass with carts and other vehicles from one part of his said land to the other, and has been and is greatly disturbed in his quiet and peaceable occupation of the premises.

The cause was tried at *Hartford, September* term, 1840, before *Sherman, J.*

The defendants are successors of the corporation established by the General Assembly, in *May*, 1822, by the name of *The President, Directors and Company of the Farmington Canal.* The act incorporating the defendants, was granted

*Hartford,*
*June, 1841.*

Hooker
*v.*
The New-
Haven and
Northampton
Company.

in *May,* 1836. Both these acts, constituting the entire charter of the defendants, are made a part of the present case; and as they appear among the "*Private Laws of the State of Connecticut*," published, by authority of the General Assembly, in 1837, *pp.* 300. 308. this reference to them may supersede a detailed statement of their provisions.

The plaintiff claimed to have proved all the allegations in his declaration. It was admitted, that the canal and waste-wier in question, through which the water flowed, by which the plaintiff claimed his premises to have been injured, were originally constructed under the direction of the commissioners of the *Farmington Canal,* according to the provisions of the act incorporating that company.

The defendants claimed, that the waste-wier had been made and used properly, and only for the purpose for which it was made ; and that no more water had been permitted to flow through it than was necessary to preserve the canal from injury ; and that, if the jury were of that opinion, their verdict should be in favour of the defendants.

The plaintiff claimed to have proved, that there was no other waste-wier on the canal within one mile and a quarter on one side, and about three miles on the other side thereof; that the canal was so located at the foot of a mountain, and extending parallel thereto near this place, that great quantities of water flowed into the canal, at times of rain ; and that the defendants had not exercised due caution and prudence in suffering the canal to remain without other waste-wiers near the one in question. The plaintiff therefore claimed, and so requested the court to instruct the jury, that if the jury should find the facts as claimed by him, and that damage had thereby resulted to his land, as alleged in his declaration, their verdict must be in his favour. The plaintiff also claimed, and so requested the court to instruct the jury, that even if the canal and waste-wier were constructed under the direction of the commissioners, and although the defendants had discharged no more water through the waste-wier than was necessary to preserve the canal from injury; yet the defendants had no right to use their waste-wier to the injury of the plaintiff's property ; and if they had done so, in the manner alleged in the plaintiff's declaration, the verdict must be for him.

The court charged the jury as follows: "The legislature have power to establish canals and other public ways, and are under no other restriction than is imposed by that provision of the constitution which prohibits taking the property of any person for public use without just compensation therefor. The property of the plaintiff, which is now in question, has not been taken; and no question, therefore, arises in this case as to the constitutional power of the legislature in authorizing the construction of the *Farmington Canal.* The grievances complained of, by the plaintiff, are consequential, and are caused by the flowing of water from a waste-wier of the canal over the adjoining lands of others upon and through the land of the plaintiff, by which it has been injured. The legislature have prescribed, and had a right to prescribe, how the canal should be built. Waste-wiers are indispensable. They may authorize them to be made; and when made, they may be used for the purpose for which they were made. It was their duty to guard against injuries to the property of individuals; but they were judges of the means proper for preventing them. For this purpose, among others, they appointed a board of commissioners, as an impartial tribunal, to decide on the several parts of the work; and it is admitted, that they approved this wier or outlet, after it was completed, and its location, and also the location and structure of all the other wiers upon the canal. The use of them is lawful, if it is prudent and in conformity with the intentions with which the use was granted. It is like an ancient mill, which has gates and waste-ways. If in a storm there is danger to the buildings, or to the dam of the mill, the owner may let out the water, and the damages suffered by those below entitle them to no recompense. But if the owner should fill his dam, and let it out wantonly and needlessly, to the injury of property below, his right to use his waste-gates would be no justification. The canal is lawful, and the use of it authorized by law. The imprudent use of it would not be lawful. Against the prudent use of it, individuals must protect their own property. The facts admitted, prove, that the defendants by law have a right to use this canal and the waste-wiers to the extent to which they can be properly used. The true inquiry, then, is, have the defendants used the waste-way prudently; or have they let out the water to the plaintiff's injury, without proper pru-

*Hartford,*
June, 1841.

Hooker
*v.*
The New-
Haven and
Northampton
Company.

*Hartford,*
*June, 1841.*

*Hooker*
*v.*
*The New-*
*Haven and*
*Northampton*
*Company.*

dence and care ; and this is a question for the jury to decide. If you find the former, you will find the issue for the defendants ; but if the latter, your verdict will be for the plaintiff."

The jury returned a verdict for the defendants ; and the plaintiff moved for a new trial for a misdirection.

*Toucey* and *T. C. Perkins,* in support of the motion, contended, 1. That if the injury sustained by the plaintiff had been caused by the acts of an individual, though done for the protection of his own property, and without evil design, he would, upon principles of the common law, be liable.

2. That if done by a corporation, an artificial person, that corporation must be equally liable, unless exonerated by its charter.

In the first place, there is no *express* exemption in the charter ; and the law protects individual rights, unless *expressly taken away.* *Jackson* d. *Gratz* & al. v. *Catlin,* 2 *Johns. Rep.* 248. 263. *Rowe* v. *The Granite Corporation,* 21 *Pick.* 344. 348. *Boughton* v. *Carter,* 18 *Johns. Rep.* 405.

Secondly, no exemption is to be *inferred* from the charter or its provisions, by any principle of law applicable to this subject. The action of the commissioners is not binding upon the plaintiff, who was not a party to their proceedings. *The People* v. *The Kingston and Middletown Turnpike Road Company,* 23 *Wend.* 194, 210. This is not like those cases where injury is sustained by the owner of land through which a canal runs, who has been compensated by appraisal. *Steele* v. *Western Inland Lock Navigation,* 2 *Johns. Rep.* 283. Nor where damages result from improvements in the course of navigable rivers. *Hollister* v. *The Union Company,* 9 *Conn. Rep.* 436. *Lansing* v. *Smith* & al. 8 *Cowen,* 146. *The Canal Appraisers* v. *The People,* 17 *Wend.* 571. Or by erections to protect shores from the action of the sea. *The King* v. *Commissioners* &c. *of Pegham,* 8 *Barn. & Cres.* 355. Nor is this like the case of injury resulting from alterations of highways. *The British Cast Plate Manufacturers* v. *Meredith* & al. 4 *Term Rep.* 794. *Callender* v. *Marsh,* 1 *Pick.* 418. 431. *Boulton* v. *Crowther,* 2 *Barn. & Cres.* 703.

3. That if there were any exemption, express or implied, in the charter, it would be unconstitutional, and therefore inoperative upon the plaintiff's claim. His property has been

substantially, if not literally, *taken for public use.* Ex parte *Jennings*, 6 *Cowen*, 525. *The People* v. *The Canal Appraisers*, 13 *Wend.* 372. *Gardner* v. *Village of Newburgh*, 2 *Johns. Ch. Rep.* 166. *Stevens* v. *Proprietors of Middlesex Canal*, 12 *Mass. Rep.* 466. 468. *Crittenden* v. *Wilson*, 5 *Cowen*, 165.

*Hartford,*
June, 1841.

Hooker
*v.*
The New-
Haven and
Northampton
Company.

*W. W. Ellsworth*, contra, after remarking, that if the defendants have done no more than they were authorized to do, and the authority has emanated from the supreme power, according to the constitution of the *United States* and of this state, the defendants cannot be liable in a court of justice acting under the authority of this state, contended, 1. That the legislature authorized the defendants to make this waste-way or gate ; and it was *necessary* to the canal.

2. That the legislature had a right to authorize the act in question. In the first place, to this body appertains the right to provide for the construction of roads, canals, &c. Nor are they less *public*, because private companies, instead of public agents, are authorized to make them. These public franchises are derived from the sovereign power, and regulated by it. 3 *Paige* 74. Secondly, the act giving the authority in question, is not void, because it provided no compensation for private property taken under it. No property has, in this case, been *taken*, directly or indirectly. No new interest has been taken from one and vested in another ; but remote damages only have accrued. This is not *taking* private property. If any remote consequential damage is to render the act unconstitutional, unless that damage was anticipated, and compensation provided for it, then many laws are unconstitutional whose validity has never been doubted. The remote or contingent injury to individuals, enters into the question of expediency, not of power.

WILLIAMS, Ch. J. The plaintiff having, as he claimed, proved the injury done to his property, by means of the waters of the canal being discharged in such a manner as, after running through the lands of other persons, to flow upon his, and greatly injure it, demanded compensation in damages from the defendants. It was claimed, and not denied, that the canal and waste-wier were constructed under the direc-

*Hartford,*
*June, 1841.*

Hooker
*v.*
The New-
Haven and
Northampton
Company.

tion of the commissioners appointed by the legislature according to the provisions of the act of incorporation ; and the defendants claimed, that the waste-wiers were properly made and used, and that no more water was permitted to flow through the same than was necessary to preserve the dam of the canal from injury.   The plaintiff claimed, that one waste-wier was not sufficient in that place, and that the defendants had not used due caution and providence in not having more waste-wiers, and that they had no right to use their waste-wier to the injury of the plaintiff's property.   And the court charged the jury, that as the legislature had prescribed how the canal should be constructed, as waste-wiers were indispensable, and as it was admitted that commissioners, duly appointed for that purpose, approved of the waste-wier and its location, it became lawful, and individuals must protect themselves against it ; and the inquiry for the jury was, was it so used, or was it used without proper prudence or care. On this instruction a verdict was given for the defendants; and the plaintiff moves for a new trial.

The claim was not, that this damage became necessary, by reason of some act of Providence, or some unexpected calamity, but resulted from using the waste-wier, for the necessary protection of the canal, when the waters were high.   Neither does it appear upon the motion, that it was claimed, that the plaintiff's remedy, if any, was before commissioners.   But the broad ground is taken, that the canal, being authorized by law, and constructed according to the direction of those who were appointed for that purpose, the defendants are not responsible in damages to the plaintiff.

Two questions may here arise : Can the legislature pass an act, by which the property of one individual may be greatly injured, by works of this kind, without giving compensation ? And have they here attempted to do it ?

It is no doubt incident to the sovereignty of every government, that it may take private property for public use, of the necessity or expediency of which the government must judge; but the obligation to make compensation is commensurate with the right.   The fundamental maxim of a free government requires that the right of personal liberty and private property, should be held sacred.   *Wilkinson* v. *Leland* & al. 2 *Pet.* 657.   "And it may well be doubted whether the nature

of society and of government does not prescribe some limits to the legislative power; and if any can be prescribed, where are they to be found, if the property of an individual, fairly and honestly acquired, may be seized without compensation?" *Fletcher* v. *Peck,* 5 *Cranch,* 185. per *Marshall,* C. J. 6 — 13

*Hartford,*
June, 1841.

Hooker
v.
The New-
Haven and
Northampton
Company.

It is said, the government have a right of eminent domain; in other words, the sovereign power has a right to resume the property given to individuals, whenever the public interest requires it. This, however, is to be done in the manner directed by the constitution and laws of the state.

The right of eminent domain, says Chancellor *Kent,* or inherent sovereign power, it is admitted by all publicists, gives to the legislature the controul of private property for public use, and for public use only. He then mentions roads and canals, and adds, in these and other instances, which might be enumerated, the interest of the public is deemed paramount to that of any private individual; and yet even here, the constitution of the *United States,* and most of the states of the Union, have imposed a great and valuable check upon the exercise of legislative power, by directing that private property shall not be taken for public use without just compensation; and a provision for compensation, is a necessary attendant on the due and constitutional exercise of the powers of the law-giver, to deprive an individual of his property without his consent; and this principle in *American* jurisprudence is founded in natural equity, and is laid down by jurists, as an acknowledged principle of universal law. 2 *Kent's Com.* 339.

It is said, the land is not *taken;* and therefore, no compensation is to be made. At the time the canal was laid out and built, it is evident that this land was not taken and devoted to the public use; and we have no evidence before us tending to show, that it was within the contemplation of the parties, or the canal commissioners, that this land could be injured or affected by the canal. Of course, no provision was made for such an injury, at that time; and so far as appears by this motion, it was not a point made below; and consequently, it is not one now before the court, whether the damages that might subsequently arise could not be appraised, by the commissioners; and if so, if that was not the only forum. In the review of this case, it is assumed, therefore, that the commissioners had no such power.

*Hartford,*
June, 1841.

Hooker
*v.*
The New-
Haven and
Northampton
Company.

We come then to this question, whether the act of incorporation, if faithfully followed, will protect the defendants against a claim for damages to his property.   If it will, it must be because the act expressly provides for such a case ; or because it gives another remedy ; or because, from a fair construction, this is the manifest intent of the legislature, and authorized by the constitution.

As to the first.   It cannot be contended that there is any express justification of such an injury in the act itself.

As to the second.   That question not appearing to have been made below, does not, within the rules of this court, arise here.

The defence then must rest upon this, that a fair construction of this act protects them against the claim of the plaintiff.

To determine this, we must look at the act of incorporation. The 1st and 2d sections incorporate the company, and authorize the construction of the canal.   The 3d section gives power to hold real estate, surplus water, &c., and to make the canal, with necessary dams, waste-wiers, locks, &c.   The 4th creates a board of commissioners, with power to survey and lay out the route of the canal, with all the works connected therewith, and notify the parties, and appraise the damages. The 5th provides, that the corporation may enter upon and take possession of any lands, waters and streams necessary for the prosecution of said improvement ; and the commissioners are to assess the just and necessary damages occasioned thereby ; and the lands, waters and streams so taken shall be owned and possessed by said corporation, for their use forever.   The 6th section provides, that as the works may be injured, by unforeseen accidents, the company may enter upon lands adjacent, and carry away stone, gravel and timber, as may be necessary and proper, to repair the same ; which damages are to be assessed, by the commissioners. The 7th section provides for an appeal from the commissioners.   The 21st section appoints the commissioners, and provides for their compensation, and that they shall, from time to time, inspect the construction of said canal and works connected therewith, and report ; and when it shall be completed, commissioners are to be annually appointed.   By the 23d section, the commissioners are required, annually or oftener,

to inspect the canal, bridges, &c.; and if out of repair, or if the locks are not faithfully tended, may stop the toll.

*Hartford*, June, 1841.

Hooker *v.* The New-Haven and Northampton Company.

These are, it is believed, all the provisions of the charter, which in any way bear upon the subject. And upon a careful inspection, a majority of the court cannot admit, that the charter warrants the construction claimed by the defendants.

The route of the canal, the works upon it and the damages done by it, are to be subject to the decision of the commissioners. Unless, therefore, the canal was made in the place designated, and the works constructed in the manner approved, by the commissioners, it would not be the canal of the charter. This being done, and the damages assessed and paid, it became a canal legally authorized, and the company became vested with a legal right to the enjoyment of their property. But a very different question arises, when the company in consequence claims a right so to use this property as to do injury to others without compensation. They must have a right to use the canal for the purposes for which it was designed; but does this imply that, to protect themselves in this enjoyment, they have right to injure their neighbour? An individual has good right to his house and lands, to use them at his pleasure. The water from his roof may greatly interrupt this use; but this gives him no right to turn it upon his neighbour's land. When the legislature gave to this company power to construct this canal, they authorized them to take the land necessary for that purpose, and also what might become necessary to repair it afterwards, making just compensation. But we look in vain for authority in this company to protect the property thus acquired, in any other manner than an individual has to protect his own property, except so far as it is given by the 6th section.

When we consider the solicitude with which individual rights are guarded in all free countries, and especially by our own constitution; when we see how careful the legislature have been, in this very charter, to provide for injuries, which were contemplated to arise; we think we should not do justice to the intention of the law-givers, in supposing that they intended, that the vested rights of individuals should be taken away, or essentially impaired, by the acts of this artificial person, more than by the acts of individuals. At least, we must require very clear evidence that such was their intent,

*Hartford,*
*June, 1841.*

Hooker
*v.*
The New-
Haven and
Northampton
Company.

before we can say, that it has been done, and no compensation provided. A turnpike company must have a right to repair their road and to protect it; yet they have no right to turn the water, which washes the road, on to the land of another person to his injury. *Boughton* v. *Carter,* 18 *Johns. Rep.* 405.

If it is said, that by the provisions of the 6th section, the payment of damages is provided for; the answer is, that this section provides, that the lands, water and streams so taken shall belong to the corporation forever. Unless the injury here is of that kind that payment of damages vests the title in the defendants, it cannot be included in the provision of this section; and if it is, it would seem to be cognizable by the commissioners.

The great argument, however, is, that as the canal, in its construction, and particularly, as it respects this waste-wier, has been approved by the commissioners, the company are justified in the prudent use of the works so constructed; and as the commissioners sanctioned a single waste-wier in this part of the works, the prudent use of this waste-wier must also be sanctioned. This may justify the company in making but a single waste-wier. It is evidence that the commissioners were of opinion that one waste-wier was sufficient to prevent injury to the company or to individuals from the water of the canal. But suppose that they were mistaken, and that it was not sufficient; is there any evidence that the commissioners themselves intended that they should use it to the injury of third persons, rather than sustain the damage themselves? Or if they did so intend, we should demand their authority to do this. An individual may use his own property, without intent to injure his neighbour; but if in so doing, he does him a damage, he must be answerable. For in all civil actions, the law doth not so much regard the intent of the actor as the loss and damage of the party suffering; and although a man does a lawful thing, yet if any damage do hereby befal another, he shall answer it, if he could have avoided it. As if a man lop a tree, and the boughs fall upon another *ipso invito;* yet an action lies. I have land through which a river runs to your mill, and I lop the fallows growing upon the river's side, which accidentally stop the water, so as your mill is hindered; an action lies. If I am building my house, and a piece of timber falls on my neighbour's house,

and breaks part of it; an action lies. If a man assault me, and I lift up my staff to defend myself, and in lifting it up, hit another; an action lies by that person; and yet I did a lawful thing. And the reason of all these cases, is, because he that is damaged, ought to be recompensed. *Lambert* & al. v. *Bessey, T. Raym.* 423. 467, 8. So in an action for an assault, where the defendant, a trained soldier, was skirmishing with the plaintiff and his company, and the defendant, with his musket, *casualiter, et per infortunium, et contra voluntatem suum,* in the discharge of his gun, hurt the plaintiff, it was resolved for the plaintiff; and it was held, that no man, not even a lunatic, shall be excused of a trespass, except it be adjudged utterly without his fault. *Weaver* v. *Ward, Hob.* 134. And where trespass was brought for entering a close, and taking a horse, and the defendant pleaded that he, for fear of his life, by threats of twelve men, went into the plaintiff's house and took the horse, the plaintiff demurred, and it was adjudged for him, because the threats could not excuse the defendant and make satisfaction to the public. *Gilbert* v. *Stone, Style* 72. Lord *Bacon* says, if a person be assaulted in his own house in a city or town, and distressed, and to save his own life, sets fire to his own house, which spreads and takes hold of the adjoining house; this is not justified, because I cannot rescue my own life, by doing any thing against the common wealth. 15 *Vin. Abr.* 535.

If the common law so restricts individuals in the protection of their own property and lives, can we suppose that powers so extensive, were by implication given to this corporation? If the approval of the work by the commissioners was to be a perpetual shield to the company, for all injuries which might in future be done to individuals, would not all persons be called upon to object before such approval? As it is, it is a mere *ex parte* concern, of which the public have no notice, and in which individuals have hitherto understood they had no interest. Such approval will give the company a right to take toll according to the provisions of the charter; but it by no means follows, that it will protect them from damges done to individuals. Where a turnpike company, under a favourable report of commissioners, had received from the governor a license to collect toll; upon a *quo warranto*, it was held not to be sufficient evidence that the road was finished. *The*

*Hartford,*
*June,* 1841.

Hooker
*v.*
The New-
Haven and
Northampton
Company.

Hartford,
June, 1841.

Hooker
v.
The New-
Haven and
Northampton
Company.

*People* v. *Kingston and Middletown Turnpike Road,* 23 *Wend.* 194.

But supposing that the approbation of the commissioners places the company upon the same ground, as if the particular mode of construction had been pointed out in the act of incorporation; the question then would be, whether the grant of a charter of incorporation to a canal company to construct the canal in a certain manner, with proof that it was so constructed, would justify the company in using it in such a manner as to injure the property of other persons, to protect their own. We think, that the party that makes this claim, is bound to produce some authority in support of it. No such case is produced, except that of *Hollister* v. *The Union Company.* On the contrary, we believe that a different principle has been adopted in other states under similar constitutions.

In *Stevens* v. *The Proprietors of the Middlesex Canal,* 12 *Mass. Rep.* 466. 468. a suit was brought against a canal company, which had constructed their works in such a manner that the water oozed through the banks, and injured the plaintiff's meadow. No proof was offered to show that the defendants had done any thing not authorized by their act of incorporation; nor that they had been guilty of any negligence, or any default, in the manner of making or maintaining the canal. The court there held, that as the legislature had, in that case, provided another mode of redress, the action would not lie; but they say: " When the legislature authorizes an act, the necessary and natural consequence of which is damage to the property of another, he who does the act cannot be complained of as a trespasser or wrong-doer. In the declaration of rights prefixed to our constitution, it is provided, that private property shall not be taken and appropriated to public use, without compensation to the owner. So that if the legislature should, for public advantage and convenience, authorize any improvement, the execution of which would require or produce the destruction or diminution of private property, without affording, at the same time, means of relief and indemnification, the owner of the property destroyed or injured, would undoubtedly have his action at common law, against those who should cause the injury, for his damages. For although it might be lawful to do what the legislature should authorize; yet to enforce the principles of the consti-

tution for the security of private property, it might be neces- *Hartford,*
June, 1841.
sary to consider such a legislative act as inoperative, so far as
it trenched upon the rights of individuals." There, the injury Hooker
*v.*
The New-
Haven and
Northampton
Company.
is supposed to proceed directly from the act authorized by the
legislature, while in this case the injury does not proceed
directly from the act authorized, but from a subsequent act
of the defendants, intended to protect them in the enjoyment
of the privilege granted. Supposing, then, the act of the
defendants in this case to have been expressly authorized by
their charter, and no provision made to indemnify them, the
principles of the case cited would, if adopted, be conclusive
in support of the claim for indemnity at common law.

The same principles seem to be recognized, by Chancellor
*Kent,* in the case of *Gardner* v. *The Village of Newburgh,*
2 *Johns. Ch. Rep.* 166. In that case, the legislature had
authorized the village to supply themselves with water from
a stream running through the plaintiff's farm, by which the
plaintiff claimed he should be much incommoded; and an in-
junction was granted. The Chancellor admits the power of
the legislature; but to render it valid, he says, a fair compensa-
tion must, in all cases, be previously made to the individual
affected, under some equitable assessment to be provided by
law. This is a necessary qualification accompanying the
exercise of legislative power, in taking private property for
public use. The limitation is admitted, by the soundest
authorities, and is adopted by all temperate and civilized gov-
ernments, from a deep and universal sense of its justice.
The learned judge cites *Grotius* and other eminent authorities,
to show, that where the right of eminent domain exists un-
fettered by written constitutions, it is a clear principle of
natural equity, that when private property is taken for public
use, the individual whose property is thus sacrificed, must be
indemnified. In that case, he insists, that the legislature
could not have intended to interfere with private rights; and
there was no reason why the rights of the plaintiff should not
be protected. See also *Bonaparte* v. *The Camden and Amboy
Rail-road Company,* 1 *Bald.* 229. And even in *England,*
where there are no such checks as we have upon legislative
discretion, so great is the regard for private property, that in
theory at least, the law will not sanction the least violation of
it. All that the legislature will do, is, to compel the owner to

HARVARD LAW SCHOOL LIBRARY.

*Hartford,*
*June, 1841.*

Hooker
*v.*
The New-
Haven and
Northampton
Company.

alienate his possession for a reasonable price; and even this is an exertion of power, which the legislature indulges with caution, and which nothing but legislative authority can perform. 1 *Bla. Com.* 139.

In a more recent case in *Massachusetts*, on a bill for an injunction, the defendants pleaded that they had constructed the road and bridge precisely in the manner and in the direction prescribed by the act of incorporation, and had done nothing not authorized by that act. The court say, that the corporation, in the absence of positive enactment, are bound to make suitable bridges, culverts, &c., and to keep them in suitable and sufficient repair, so as to carry off the water effectually. This is implied, because it cannot be presumed the legislature would grant authority to enter upon and take private land for public use, on other terms. The extent and limits of the duties and powers, in the absence of positive enactment, must be determined by what is reasonable in each case. If, after all, there should happen to be private property so situated that some damage must be done to it, which could not be obviated, by reasonable precautions, inasmuch as it is expressly authorized by the legislature, in the exercise of the right of eminent domain, such proprietor must be left to seek his compensation in the mode prescribed by the legislature. *Rowe* v. *The Granite Bridge Corporation,* 21 *Pick.* 344. 348.

If we adopt the principles of these cases, and suppose, as for the purposes of this case we do, that no provision is made, by the charter, for the assessment of damages by the commissioners, we think, that this action must be sustained. It is not to be intended from any thing in this charter, that the General Assembly meant to give power to this company to take away or essentially impair the rights of other persons, for which they had made no provision.

It is claimed, however, that the case of *Hollister* v. *The Union Company,* 9 *Conn. Rep.* 439. decides this case for the defendants; and the judge at the circuit yielded to that opinion.

A majority of the court, however, think otherwise. There, a company was authorized to remove obstructions in *Connecticut* river. In doing this, the current was somewhat straightened and made more rapid; and the plaintiff claimed,

that his land was in consequence worn away. And the court held, that this being a public navigable stream belonging to the sovereign power, that power had good right to improve its navigation, in the manner done by the defendants; and that when the lands on the banks were granted, they were subject to that condition; and so the owners of these banks, and not the public, were bound to protect them against the damage which might arise from such improvements. This is the ground upon which that case rests. Here, the plaintiff's lands were not upon a great public stream, and are no more subject to be taken for canals without compensation, than for turnpike roads. To suppose that they were taken upon any such condition, as if a navigable stream was running through them, is to take for granted the point in dispute. Nor was the damage done, in this instance, the natural consequence of making the canal. It was an act done voluntarily and deliberately, by the defendants, though not maliciously, to protect their own property, at the expence of the plaintiff's. In support of the opinion in that case, the judge cites an *English* case as analogous. That was an action against persons acting under the direction of commissioners appointed by act of parliament for so raising the highway that the plaintiffs could not get into an arched way through which they used to carry their goods to their ware-house, and had to unload them in the street. It was proved, that the commissioners had not exceeded their jurisdiction; that what was done was necessary and proper to make the street safe for carriages; and the defendants were held justified. *The Governor and Company of the British Cast Plate Manufacturers* v. *Meredith* & al. 4 *Term Rep.* 794. The judge further goes on to shew, that the claim made by the plaintiff in that case, was for consequences so remote as would lead to endless litigation, and prevent all improvement. He then adds: "The defendants have not directly invaded the property of the plaintiff. They have not taken it without just compensation; but have acted under authority of the legislature, to which appertains the power of regulating a public navigable river, and produced a remote and consequential injury to the plaintiff's land." In the present case, the injury, though consequential, cannot be considered as remote. It flowed directly from the act of the defendants in throwing their surplus water upon the plaintiff's

*Hartford,*
*June, 1841.*

Hooker
*v.*
The New-
Haven and
Northampton
Company.

*Hartford,*
*June, 1841.*
——————
Hooker
*v.*
The New-
Haven and
Northampton
Company.

land, and thus depriving him of the use of it; and they claim to take it without any just compensation therefor.

We think, therefore, that there is nothing in the case of *Hollister* v. *The Union Company,* which ought to disturb the foundation upon which the plaintiff's case rests; and therefore, direct that a new trial be had.

In this opinion CHURCH and STORRS, Js. concurred.

SHERMAN, J.   The defendants were incorporated in *May,* 1836; and by the 7th section of their charter, succeeded to all the "rights and immunities" of the *Hampshire and Hampden Canal Company,* and of the *Farmington Canal Company.* The last named company was incorporated in *May,* 1822, and their charter covered the particular territory now in question.   By the 4th section, the canal is ordered to be built under the direction of a disinterested board of commissioners, who, by the 21st section, are required "to inspect from time to time the construction of said canal and all the works connected therewith."   It is admitted, that such a board was appointed, and that their duty was honestly and fairly performed.   Among other things, a waste-wier, to relieve the canal from the hazards of a flood, was constructed under their direction, and by them approved.   The water which issued from it, after passing the grounds of other individuals, flowed on to that of the plaintiff, by which he suffered damage.   For that the present action was instituted.   On the trial in the superior court, the question was left to the jury, "whether the defendants had used the waste-wier prudently, or had let out the water to the plaintiff's damage, without proper prudence and care;" with instructions to find a verdict for the defendants, if they found these facts in their favour.   By their verdict, therefore, the fact is settled, that this waste-wier was used, by the defendants, prudently; and the question occurs, whether, admitting all this, the plaintiff is entitled to recover.

The question of law which requires our investigation, is, whether an individual or company, using a work constructed for the public, by legislative authority, prudently, and in the manner expressly authorized, is liable for the consequential

damages, which may result from such use, to the property of others.

*Hartford,*
June, 1841.

Hooker
*v.*
The New-
Haven and
Northampton
Company.

This question has received repeated adjudications from courts of the highest authority ; and I have not been aware of *any* diversity of judicial opinions in regard to it.   It is of so great public consideration, and of such frequent occurrence in practice, as renders its correct decision of high importance.

The very point arose about half a century ago, in the *King's Bench,* in the case of *The Governor and Company of the British Cast Plate Manufacturers* v. *Meredith* & al., 4 *Term Rep.* 794.   An act of parliament authorized certain commissioners to pave a street.   In doing this, the paviors, who acted under their direction, raised it so high above its former level, as to obstruct the entrance of the plaintiffs, under an arch, to their warehouses, where they had always driven in carriages and unloaded their glass.   That they had sustained damages was not denied; and the jury estimated them at 150*l*.   But the case was stated for the consideration of the court, and the precise question presented, which arises here, namely, whether, if the commissioners acted within their jurisdiction, either they or the defendants, who acted under them, were liable to any action, by a party injured. Lord *Kenyon* says : "It does not seem to me, that the commissioners, acting under this act, have been guilty of any excess of jurisdiction.   Some individuals suffer an inconvenience under all these acts of parliament; but the interests of individuals must give way to the accommodation of the public."   *Buller,* J. says: "If the thing complained of were lawful at the time, no action can be sustained against the party doing the act.   In this case, express power was given to the commissioners to raise the pavement ; and not having exceeded their power, they are not liable to an action for having done it."

In the arguments of counsel, the case in question was compared to that of individuals, who are liable to others for injuries resulting from acts in themselves lawful.   The individual is acting for himself, in the use of his own property or personal rights, and is bound so to use his own as not to injure others.   *Lambert* v. *Bessy, T. Raym.* 421. 467.   But the law in regard to that class of cases has no bearing on this.   Such an application of it has been frequently repelled, and never

*Hartford,*
*June, 1841.*

Hooker
*v.*
The New-
Haven and
Northampton
Company.

to my knowledge, judicially adopted. The distinction is clearly drawn, and most authcritatively sustained, between the cases in which the act done is in the public service or in the execution of a public trust, and those which concern mere private rights. The individual who lawfully raises his weapon in self-defence, and in doing so unintentionally injures an un-offending by-stander, whom he did not see, is liable for that injury. But had he been in public military service, and raised his weapon, by the just command of his superior officer, neither he nor the officer would have been responsible for the damage. The distinction was forcibly applied, by Ch. J. *Gibbs,* in the case of *Sutton* v. *Clarke,* 6 *Taun.* 29. which was very similar to this. It was an action on the case against one of several trustees under a turnpike act. A road was liable, after heavy rains, to be flooded, by the waters of a neighbouring brook. To protect it from this injury, the brook, by direction of the trustees, was diverted, by means of a ditch, and after passing over several closes, it flowed upon the land of the plaintiff, and had done him an injury. This was unforeseen and consequential. *Gibbs,* Ch. J. in giving the opinion of the court of *Common Pleas,* says : "This case is *perfectly unlike that of an individual,* who, for his own benefit, makes an improvement on his own land, according to his best skill and diligence, and not foreseeing it will produce any injury to his neighbour. If he thereby unwittingly injure his neighbour, he is answerable. The resemblance fails on the most important point of comparison ; that his act is not done for a *public* purpose, but for his *private* emolument." He previously remarked, that the case was to be determined on principle alone ; "and on principle, we are of opinion, that the defendant is not liable in this action." I cannot discover how that case, on principle, can be distinguished from this. The Ch. Justice adverts to the case of *Leader* v. *Moxon,* 2 *Bla. Rep.* 924. 3 *Wils.* 461. in which a recovery was had against commissioners for so raising the pavement as to ob-struct the plaintiff's doors and windows, and distinguished it from the principal case, on the ground that the commissioners acted "in a most tyrannical and oppressive manner." In the present case, the verdict acquits the defendants of any such imputation.

The same positions are confirmed, by the unanimous opin-

ion of the court of *Common Pleas*, in the case of *Boulton* v. *Crowther*, 2 *Barn. & Cres.* 693. That case also sheds light on the question attempted to be made in this, as to the construction of the constitutional provisions relative to property *taken* for public use. The *English* statute, under which certain trustees acted, authorized them to "make, divert, alter and improve the course or path of any of the roads under their care and management—*through* or *over* any private lands, tendering and making satisfaction to the owners thereof, and persons interested therein, for the damage they shall sustain thereby." It was contended, that if the plaintiff's land was not *taken*, the defendants were liable for a consequential injury done it, although the act had not provided a compensation for such damage. But *Park*, J. before whom the trial was had at *Nisi Prius*, charged the jury to find for the plaintiff, if they were of opinion that the trustees acted arbitrarily, oppressively or carelessly; but if they were of a different opinion, then to find for the defendant. The jury found for the defendant, and the charge was sustained by the whole court. The principles advanced by Lord *Kenyon* and Justice *Buller*, and by Ch. J. *Gibbs*, in the cases already cited, are reiterated and confirmed. Every judge, *seriatim*, states the law to be, that as the defendants had a *public* duty to perform, they were not liable for a damage resulting to an individual from an act done by them in discharge of that public duty. *Littledale*, J. in regard to the argument derived from the liability of an individual for an injury resulting to others in the use of his own property, says : "I agree that a private individual must so use his own land as not to injure that of another ; but the private individual acts for his own benefit, and he ought not to obtain a benefit at the expense of his neighbour. But where an act of parliament vests a power in trustees or commissioners, to be exercised by them, not for their own benefit, but for that of the public, and gives no compensation for a damage *resulting from* an act done by them in the execution of that power, the legislature must be taken to have intended, that an individual should not receive any compensation for a loss resulting to him from an act done for the public benefit."

No one can doubt that the property of an individual cannot be "*taken* for public use" without compensation, by the constitution of this state. Whether courts of justice would per-

*Hartford,*
*June, 1841.*

Hooker
*v.*
The New-
Haven and
Northampton
Company.

*Hartford,*
June, 1841.

Hooker
*v.*
The New-
Haven and
Northampton
Company.

mit it to be so taken, even if the constitution were silent, is a question which we need not discuss; for here the property of the plaintiff has *not been taken.* It is not *possessed* by the company; nor has any title *passed* to them from the plaintiff. The doubt, therefore, expressed by Ch. J. *Marshall,* 7 *Cranch* 135., whether the nature of society and government does not prescribe some limits to the legislative power, and especially, whether the property of an individual " may be *seized* without compensation," could not be raised as to the validity of the act establishing this canal, because the plaintiff's property has not been *seized or taken.* The remarks of Chancellor *Kent,* in 2 *Com.* 339., of Judge *Baldwin,* in *Bonaparte* v. *Camden and Amboy Rail-road Co.,* 1 *Baldwin's Rep.* 229., of *Story,* J., in 2 *Peters,* 267. and of *Blackstone,* 1 *Com.* 129. in regard to the limitations of legislative powers, where there are no constitutional provisions, are, for the same reason, equally inapplicable. There is not an intimation from either of them, that when a *consequential* injury results to the property of another, which has not been *taken,* by an act done for the public, and authorized by legislative authority, that the act of the legislature is so far void, or that those who execute it are liable. That is the only question.

In the state of *New-York,* before their present constitution was adopted, in 1822, as well as since, the rule has been, that the property of an individual could not be *taken,* by legislative authority, for public use, without compensation; and the case of *Gardner* v. *Newburgh,* in 1816, already referred to, goes no further. In that case, the stream of another person was *taken,* but not the land on which it flowed. The Chancellor says, (*p.* 165, 6.) that "the right to a stream of water is as sacred as a right to the soil on which it flows. It is a part of the freehold, of which no man can be disseised, but by the judgment of his peers, or by due process of law." The same opinion was held in the case *ex parte Jennings,* 6 *Cowen,* 525. A peremptory mandamus was there granted against the appraisers on the *Erie Canal.* They *took* the relator's stream for a feeder for the canal; and the court held, that as the relator *owned* the place where his works were, he was *entitled* to the tributary streams.

I have not understood that any doubt had been entertained, by the counsel in this case, that property *taken* must be paid

*Hartford;*
June, 1841.

Hooker
·v.
The New-
Haven and·
Northampton
Company:

for.   The question arises where *consequential* injury results to third persons whose property is not taken, from a structure authorized by legislative authority.   Upon this point, in the case of *Steele* v. *The Inland Lock Navigation Company*, in 1807, *Thompson*, J. gave the unanimous opinion of the supreme court of *New-York.   2 Johns. Rep.* 283.   The above case of the *English Cast Plate Manufacturers Co.* v. *Meredith*, is there cited with approbation; which embraces every material point in this.   The plaintiff, in one court, claimed damages on two distinct grounds, *viz.* for the injury he received from the negligence of the defendants in not keeping their works in repair, by which the water leaked out upon his land ; and for the injury occasioned by stopping up the ditches and water courses in making the canal; so that the plaintiff's land was, from that cause, overflowed.   In giving the opinion of the court, *Thompson*, J. says, that for the leakage of the canal occasioned by the *neglect* of the defendants in keeping it in repair, the plaintiff was entitled to damages ; but in regard to the other claim, he remarks, that "the company, in making this canal, acted under the authority of an act of the legislature ; and no action will lie against them for any damages occasioned by cutting the canal, unless they exceeded their jurisdiction.   All evidence of damages on this account, ought, therefore, in my judgment, to have been excluded."

The case of *Boughton* v. *Carter*, 18 *Johns. Rep.* 405. was upon a writ of error from a justice of the peace.   The court say, that a turnpike company, [in whose service *Boughton,* the defendant below, acted in repairing a road,] have no authority to turn water upon the land of private persons.   "They can guard against this injurious consequence; and it is their duty to do so.   If they will not take this reasonable care, and the property of individuals is damaged, by their *unskilfulness* or *negligence*, they are responsible."   This clearly implies, that if they had the authority which the legislature saw fit to withhold, and had not caused the injury by unskilfulness or negligence, they would not be liable.   The ability of the legislature to confer such a power, is not questioned.   In the present case, it is admitted, on the one hand, that the canal was made in conformity with the requirements of the charter; and on the other, that any person acting under its authority,

*Hartford,*
*June, 1841.*

*Hooker*
*v.*
*The New-*
*Haven and*
*Northampton*
*Company.*

in the construction or use of the canal, would be liable for injuries resulting from his own imprudence or negligence.

The point now in question arose and was decided in the case of *Lansing* v. *Smith* & al. commissioners of the *Albany Basin,* 8 *Cowen,* 146. By the structure of the basin, injury was done to the owners of docks, by rendering them less accessible by vessels than before. The plaintiff relied upon that clause of the constitution which requires compensation to be made for property taken for public use. *Art. VII. sec. 7.* But the court decide, that "where the injury is remote and consequential, it is *damnum absque injuria,* and is to be borne as part of the price to be paid for the advantages of the social condition; and that this is founded on the principle that the general good is to prevail over individual convenience. This was one ground on which the case was decided; and the principle is the same as in the case before us. The case of *Crittenden* v. *Wilson,* 5 *Cowen,* 165. is inapplicable, as the injuries complained of resulted from the use of private property.

In *Massachusetts,* the declaration of rights requires compensation to be made for private property "when appropriated to public use." In the case of *Stevens* v. *The Middlesex Canal,* 12 *Mass. Rep.* 466., which has been referred to, although the construction of this provision did not necessarily arise, it was slightly adverted to, by Ch. J. *Parker.* He says, that for an act done by legislative authority for the public, "the *consequence* of which is damage to the property of another," no action will lie. But where there is "an improvement, the *execution* of which would *require* or *produce* the destruction or diminution of private property, an action will lie." The case was decided on other grounds. The first of these alternatives, in which an action will not lie, embraces the present case. His language is not as clear as that in which his opinions are usually expressed; but I understand him to deny the right of action in all cases of this nature, where the damage is consequential. That such was his understanding, is evident from what he advances in giving the opinion of the court in the subsequent case of *Callender* v. *Marsh,* 1 *Pick.* 418. Speaking of this clause of their constitution, he says, "there *has been no construction given* to this provision, which can

extend the benefit of it to the case of one who suffers *an indirect or consequential* damage or expense, by means of the right use of property already belonging to the public. It has ever been confined, in judicial application, to *the* property *taken and appropriated* by the government." He remarks, that it is on this principle that their general law respecting highways, and the many acts authorizing turnpikes, bridges, canals, &c. provided, that "the party whose property is *taken*, shall be indemnified," &c. " But this course has been confined to the *direct* loss of property sustained by the individual, and such expenses as are necessarily incident *to the very act of taking it." P.* 431.

*Hartford,*<br>June, 1841.<br><br>Hooker<br>*v.*<br>The New-<br>Haven and<br>Northampton<br>Company.

The case of *Rowe* v. *The Granite Bridge Company,* 21 *Pick.* 344. merely decides, that *in the absence of positive enactments,* an individual or company authorized by law to make a road over water-courses on private land, are bound, in constructing it, to make culverts, bridges, &c. for carrying off the water, and to keep them in repair to effect the purpose. The court was of opinion, that the just construction of the charter, in such a case, did not authorize the acts done ; and that all reasonable precaution ought to be used to avoid such injuries in the construction of the public works. Ch. J. *Shaw,* however, says : " If, after all, there should happen to be private property so situated that some damage must be done to it, which cannot be obviated by *reasonable precaution,* inasmuch as it is expressly authorized by the legislature, in the exercise of the eminent domain, such proprietor must be left to seek his compensation in the mode provided by the legislature." That "reasonable precaution" was used in the construction of the *Farmington Canal,* has not been questioned ; that it was prudently managed, by the defendants, is a fact established by the jury ; and as the whole was "expressly authorized by the legislature, in the exercise of the eminent domain;" this plaintiff, by the law of *Massachusetts,* could not sustain his action.

Reference has been made to the case of *The People* v. *Kingston and Middletown Turnpike Road Co.,* 23 *Wend.* 194. That was an information in the nature of a *quo warranto.* It was held, that non-compliance with the requirements of an act of incorporation, in the construction of a road, wrought a forfeiture of the franchise, although the refusal

*Hartford,*
June, 1841.
——————
Hooker
*v.*
The New-
Haven and
Northampton
Company.

to comply did not proceed from a bad or corrupt motive ; as it was enough that they were neglected or omitted ; and that the report of the commissioners would not bar an information charging such non-compliance. This decision does not impugn, or in any way relate to, the principle on which this defence is grounded. If this canal had been made on any other line than that prescribed in the first section of the charter, or in any other material respect variant from the requirements of the act, I should not say that such a non-compliance, even if honestly intended as a useful improvement, could be considered as authorized by law, or be justified by the approbation of the commissioners.

The legislature of *Connecticut*, by virtue of the eminent domain, had the power to authorize the canal for the common welfare ; and if executed in conformity to their order, and consistently with the constitution of the state, it would be most unjust to subject those tó damages, who have done that only which was expressly authorized, by the supreme authority. Commissioners, to whose oversight the legislature entrust the construction of public works, have, and must have, an extensive discretionary power. They, and all who act under them, are safe, if they conduct prudently, and do not transgress the limits of the power conferred. It is not pretended, that any act was done in constructing this canal, which was not dictated, approved and ratified, by the supreme power of the state ; and the jury have found, that in the use of the rights thus conferred for the public good, the defendants have conducted prudently. Will the law inflict damages, for acting in pursuance of its express authority ? Can it demand more than the prudent exercise of powers which it has itself conferred for the common welfare ? If the agent, who had charge of this part of the canal, had neglected to open the waste-wier made for its protection, he would have violated his duty to the state, for whose benefit it was made, and become responsible to the corporation for the damages they would have sustained, by the destruction of its banks. Upon the ground assumed by the plaintiff, the same act is both commanded and forbidden ; and in either alternative, damages must be incurred.

In all the incorporations in this state for turnpikes, railroads, &c. as for this canal, the object is *public.* The emolu-

ment of the company is subordinate and auxiliary only.   It was not for that, that the improvements were directed by the legislature.   A highway is not the less a public object, because those who make or maintain it, are paid for the accommodation which they furnish, whether they derive their compensation from the profits of the road, or any other mode of recompense.   The public accommodation is the primary and ultimate end.

*Hartford,*
June, 1841.

Hooker
*v.*
The New-
Haven and
Northampton
Company.

From the view which has been taken of cases to which reference has been made, it does not appear that there is any diversity of judicial opinions, in *England,* or the adjacent states, on any point now presented for our consideration. The three following propositions seem well settled.

1. That the only limitation, at common law, or by any constitution, to the legislative power over individual property, is, that what is *taken* must be paid for.

2. That the law which applies where injury to others results fr m acts done innocently, by individuals, in relation to their private property or other personal concerns, is never adopted in regard to those acts which are authorized for public purposes, by the supreme power of the state.

3. That where, in the execution or use of a public work, authorized by the legislature, the limits prescribed by law are duly and prudently observed, no action will lie for a consequential injury to the property of another.

These propositions, in their broadest extent, have been adopted, by this court, in the recent case of *Hollister* v. *The Union Company,* 9 *Conn. Rep.* 436. to which frequent reference has been made.   It was a suit, by the owner of a meadow, bounded on *Connecticut* river, for damages done by its being overflowed, by reason of obstructions placed in the river, by the defendants, to deepen the channel and improve the navigation.   The court held, that the plaintiff could not recover.   Ch. J. *Daggett,* in giving the opinion of the court, thus states the great question in the case: "This court is called upon now to decide, whether the defendants can be liable, in any action, for damages for a consequential injury arising to the plaintiff's land, occasioned by the prudent erection of the defendants' works, without any intention to injure him or others, but in the honest and discreet execution of

*Hartford,*
June, 1841.

Hooker
*v.*
The New-
Haven and
Northampton
Company.

their powers. I am well satisfied, that such an action will not lie." This proposition alone would seem to be decisive.

But it is said, that there is a difference between a navigable river, which is a highway at common law, and a canal, which is a highway by statute. To shew this difference, two propositions are relied on. 1. Those who own on the shores of the sea or a navigable river, are to protect themselves against its encroachments. *Rex* v. *Pagham*, 8 *Barn. & Cres.* 355. Therefore, if *A* erects suitable bulwarks, and does it prudently, to protect his shores against " the common enemy," and the banks of *B*, an adjacent proprietor, are in consequence torn away; no suit will lie against *A*, because every proprietor has a right thus to protect himself against the waters of the sea and its branches. The tide waters extend up *Connecticut* river to the *locus in quo.* This shews one instance in which even an individual, acting for himself, is not liable for the consequential injury resulting from his own act. But how does this apply? No individual could lawfully erect these dams and other obstructions *in the river,* without legislative authority. If the *Union Company* had no charter, they would be liable for the injuries done to adjoining lands. They are not riparian proprietors, and were not erecting bulwarks to protect the shores of the river against the encroachments of the sea. They have not the character, and consequently not the rights, of those whom the common law authorizes to divert the waters so as to injure another. It was not the sea which destroyed the plaintiff's meadow, but the diversion of it by the works of the corporation. Against the former only, the plaintiff was bound to protect his shore ; not against the latter.

2. It is said, that those who own lands on the borders of a navigable river, have taken their titles from the state, subject to the right of the legislature to make all necessary improvements. This is true ; and it is equally so, that every proprietor of land, wherever located, holds it subject to the right of the state, by virtue of the eminent domain, to take it for public use, or to make such improvements for the common welfare, as the supreme power may prescribe. Those who border on a canal, which is a legislative way, hold by the same tenure, in this respect, as those who own the shores of a navigable river, which is a way at common law.

These considerations seem to me to repel the distinction, very satisfactorily, which is attempted to be taken between the case last cited and the present. But the court who made the decision, proceed, distinctly and avowedly, on a broader principle, which they apply to all artificial ways, as well as to a navigable river. In proof of this, nothing more is necessary than the language of the Ch. Justice, in delivering the opinion of the court. He says: "There is another case *quite in point.* I refer to *The Governor and Company of the British Cast Plate Manufacturers* v. *Meredith.* It was there decided, 'that where the acts of commissioners appointed by a *paving act,* occasion damage to an individual, without any excess of jurisdiction on their part, the commissioners, or paviors acting under them, are not liable to an action.' Lord *Kenyon,* in that case, thus expresses himself: 'If this action could be maintained, every *turnpike* act, *paving* act and navigation act would give rise to an infinity of actions. If the legislature think it necessary, as they do in many cases, they enable the commissioners to award satisfaction to the individuals who happen to suffer; but if there be no such power, *the parties are without remedy,* provided the commissioners do not exceed their jurisdiction.' 'Some individuals suffer an inconvenience under *all* these acts of parliament; but the interest of individuals must give way to the accommodation of the public.' These opinions and decisions are very satisfactory reasons to shew that the plaintiff cannot recover."

"Again, the doctrine of the plaintiff, in my judgment, would lead to this result; that when any person sustains any damage, however remote or consequential, by *any turnpike road,* improvement of the navigation of a river, any new avenue or street into a large commercial place, *or any other alteration of the existing state of things,* an action will lie against those who are authorized by the legislature to accomplish such object, if they act within the scope of their powers, and with entire honesty and sound discretion. Such a principle is alike opposed to common sense, common law, and adjudged cases. I cannot assent to it."

"The defendants have not *directly* invaded the property of the plaintiff. They have not *taken* the property of the plaintiff for public use without just compensation; they have not, therefore, brought themselves under the constitutional interdiction."

*Hartford,*
June, 1841.

Hooker
*v.*
The New-
Haven and
Northampton
Company.

*Hartford,*
*June, 1841.*

Hooker
*v.*
The New-
Haven and
Northampton
Company.

I make these large quotations from the opinion of this court in the case last cited, in order to shew, that it was not founded on any peculiarity of the law relating to navigable waters, but is, by the court, declared to be applicable equally to turnpike roads and all other public ways upon the land ; and "*every alteration of the existing state of things*," for the public benefit. The strong approval of the opinion of Lord *Kenyon*, in a case which had no relation to the sea or a navigable river, as to the protection of public agents, and the injurious consequences of a contrary decision in regard to every "*turnpike act, paving act* and navigation act," is fully evincive of the opinion of the court, that this great principle is of universal application, and also that it involves no analogy to the liability of individuals for the consequences resulting from acts in themselves justifiable.    It also directly decides, that land thus flowed is not "*directly* invaded," nor "*taken*," within the meaning of the constitution ; and consequently, in such a case, the legislative power is sovereign and uncontroulled.

I am of opinion that the *English* decisions and those cited from the adjacent states, as well as the late adjudication of this court, all concur in denying the plaintiff's right of action.

For these reasons I would not advise a new trial.

WAITE, J. concurred in this opinion.

New trial to be granted.