### BURROUGHS and another *against* THE HOUSATONIC RAILROAD COMPANY.

Where a company was incorporated, by the legislature, with power to construct a rail-road, and to hold lands, engines, cars and other things necessary for its use; and while a locomotive belonging to this company, drawing a train of cars, was passing on the rail-road, some sparks from the smoke-pipe passed directly therefrom to the roof of a building of the plaintiff, standing 18 inches from the side, and 26 feet from the middle, of the road, whereby the building, without any negligence, but with the exercise of due care and skill, on the part of the company, was set on fire and consumed; in an action on the case against the company for this injury, it was held, that the defendants were not liable.

THIS was an action on the case.   The first count of the declaration, after stating the incorporation of the defendants, by the legislature of this state, and their general powers, alleged, That the plaintiffs being lawfully possessed, in their own right, of a certain building with a cider-mill therein, situated in *Bridgeport,* on the land of *Edward Burroughs,* one of the plaintiffs, the defendants, on the 23rd of *March,* 1840, caused a certain steam engine to pass along their road, near said building and cider-mill, from the pipe or chimney of which engine large sparks of fire were constantly passing into the open air ; that the defendants, well knowing the exposed condition of said building and cider-mill to said sparks of fire, did not make use of proper care in passing said building with their engine, but so carelessly and negligently permitted said engine to pass along said road near to said building, that the

fire from said pipe or chimney, by means of said negligence and carelessness, fell upon said building and set fire to the same, whereby said building, together with said cider-mill, was wholly consumed and destroyed.

*Fairfield, June, 1842.*

Burroughs *v.* The Housatonic Rail-road Company.

There were two or three other counts; but it is not necessary, with reference to any point in the case, to state them.

The cause was tried at *Fairfield, February* term, 1842, before *Sherman*, J.

The defendants were duly incorporated, by the legislature of this state, by a charter, which appears in the Private Laws, *p*. 1025. and was made part of the case; and their rail-road was constructed in conformity with the requirements of such charter. On the day mentioned in the declaration, as a locomotive of the defendants was passing *Southerly* on their rail-road, by and near to the plaintiff's building and cider-mill, drawing a train of cars, the sparks from the chimney or smoke-pipe passed directly therefrom, upon the roof of said building, and set it on fire, and said building and cider-mill were thereby consumed. These were admitted facts.

The plaintiffs claimed to have proved, that the fire was owing to the carelessness and unskillfulness of the defendants, in the management of their locomotives. The defendants claimed to have proved, that they used their locomotive with all due care and skill, on that occasion; and that the fire occurred without any carelessness on their part.

The plaintiffs contended, that even if the jury should find, that there was all due care and skill, and no carelessness or negligence, on the part of the defendants, they were still entitled to recover damages for the loss of their building, upon the facts admitted, if there was no other objection to their recovery. The court so charged the jury.(*a*)

The defendants claimed to have proved, that the building and cider-mill in question, were placed, by the plaintiffs, on the spot they occupied, after the rail-road was laid out, and that the loss of them by fire, was in consequence of their being placed so near the rail-road, through the imprudence and carelessness of the plaintiffs in locating them. And the defendants prayed the court to charge the jury, that if the loss

(*a*) This decision was made solely on the authority of *Hooker* v. *The New-Haven and Northampton Company*, 14 *Conn. Rep.* 146., and was, at the time, regarded, by some of the profession, as a *reductio ad absurdum* from that case.

*Fairfield,*
June, 1842.

Burroughs
*v.*
The Housatonic
Rail-road Com-
pany.

arose in consequence of such imprudent location, they should find for the defendants. The court charged the jury as thus requested.

It appeared that the building containing the cider-mill was 18½ feet from the *Western* track of the road on which the locomotive was passing; 26 feet from the centre of the road; and 18 inches from the *West* line thereof.

The court directed the jury to inform the court, on returning their verdict, if they should find for the plaintiffs, whether they did or did not, find, that the fire was owing to unskillfulness or carelessness on the part of the defendants.

The jury returned a verdict for the plaintiffs; and on inquiry being made as to the fire being caused by the unskillfulness or carelessness of the defendants, they stated, by their foreman, that they could not agree in regard to that fact.

The defendants moved for a new trial for a mis-direction.

*Booth* and *Dutton*, in support of the motion, contended, 1. That the defendants, in running their engine on their road, were clearly acting within the powers granted by their charter. *Priv. Stat.* 1026.

2. That the defendants are not liable for a consequential injury resulting from the use of their road in the way authorized by their charter. *The British Cast Plate Manufacturers* v. *Meredith,* 4 *Term Rep.* 794. *Sutton* v. *Clarke,* 6 *Taun.* 29. *Boulton* v. *Crowther,* 2 *B. & Cres.* 703. *Steele* v. *Western Inland Lock Navigation,* 2 *Johns. Rep.* 283. *Lansing* v. *Smith* & al., 8 *Cowen,* 146. *Rowe* & al. v. *The Granite Bridge Corporation,* 21 *Pick.* 344. *Hollister* v. *The Union Company,* 9 *Conn. Rep.* 436.

3. That the charter is not unconstitutional in relation to the authority in question. Here was no " *taking*" of private property, for any purpose. There was no *appropriation* of the building, or of its use.

4. That if the defendants had no authority from the legislature to run this engine, and were acting as *individuals* merely, they would not be responsible; there being no want of ordinary care on their part. *Clark* v. *Foot,* 8 *Johns. Rep.* 421. *Panton* v. *Holland,* 17 *Johns. Rep.* 92. *Livingston* v. *Adams* & al. 8 *Cowen,* 175.

*Bissell* and *Loomis,* contra, contended, 1. That the defendants, acting as *individuals,* would be liable in this case; the maxim, *sic utere tuo,* &c. being applicable. If they send this element of destruction abroad, they must be responsible for the injury it produces. There is no hardship in thus subjecting them; as they do the act for their own emolument. The act may not in itself be unlawful; still he that is damaged, ought to be recompensed. See the cases cited by *Williams,* Ch. J., in 14 *Conn. Rep.* 157.

*Fairfield,*
June, 1842.

Burroughs
*v.*
The Housatonic
Rail-road Company.

2. That the defendants are not protected by their charter. In the first place, it gives the company no authority in relation to injuries such as that complained of, which individuals have not. It does not purport to authorize the company to set fire to the buildings of others.

Secondly, a grant of certain privileges to an incorporated company, does not *imply* an exemption from liability for injuries to private property. All legislation, general and special, must be presumed not to injure, but to protect, the rights and property of individuals.

Thirdly, if the charter had expressly authorized the company to do all that they have done in this case, it would not protect them against a claim for injury to private property; as it would be a case within the constitutional provision. *Const. U. S. amend.* 5. *Const. Conn. art.* 1. *s.* 11. The construction put upon the word " *taken,*" is liberal, making it synonymous with *injured, damaged, seized, destroyed.* 5 *Cranch,* 185. 12 *Mass. Rep.* 466. 14 *Conn. Rep.* 153.

3. That the case of *Hooker* v. *The New-Haven and Northampton Company,* 14 *Conn. Rep.* 146., goes the full length of this case; and it is impossible to exempt these defendants from liability, without overruling that case. There, the act complained of was a lawful act; it was done with proper prudence and care; and the injury to the plaintiff was consequential;—less direct than in this case, as there the water flowed through the lands of other persons before it reached the plaintiff's; still the company were subjected.

WILLIAMS, Ch. J. The question is, whether this company, incorporated to construct this road, and to hold lands, engines, cars, and other things necessary for the use of it, are responsible for an injury of this kind; there being no negli-

*Fairfield,*
June, 1842.

Burroughs
*v.*
The Housatonic
Rail-road Com-
pany.

gence or carelessness on their part. To determine this, we must look at the nature of the action. It is founded, says Ch. Baron *Comyns*, upon a wrong. In all cases where a man has a temporal loss or damage, by the injury of another, he may have an action on the case. *Com. Dig. tit.* Action on the case, A. This injury may be caused, by the unlawful act of another, or from the carelessness or negligent manner in which a lawful act is performed. It is not every act productive of injury to another, that lays the foundation of this action; for, says the same eminent judge, it does not lie for a reasonable use of my right, though it may be to the annoyance of another. *Com. Dig. tit.* Action upon the case for a Nuisance, C.

Have these defendants done any such act, or been guilty of any such negligence, as to subject themselves to this action; or have they used their lawful rights in a reasonable manner? What acts have they done? They have built their road, and put on their engines and cars, for the purpose of transporting passengers, by means of steam-power, in the manner of other rail-road companies. It is not denied, that all they have done is in exact conformity with the object of the act of incorporation. All they have done, then, must be lawful, if the legislature could make it so. Where, then, is the wrong? It is true, that a spark from their chimney struck the roof of the plaintiff's building and consumed it; but these defendants neither guided nor directed it. In what respect does it differ from a similar injury, by a spark from a dwelling-house? In either case, the spark proceeds from a reasonable use of one's own property; it is guided in the same manner, takes the same direction, and produces the same injury. In the one case, we say it is the effect of accident or the hand of Providence: why not in the other? If there be no fault in the one case, how can there be in the other? If it be said, the sparks would not have been there, if the defendants had not come there with their engine, it may also be said, they would not have proceeded from the house, if it had not been placed there, or if there had been no fire in it. If it was a reasonable use of a house to have a fire for the ordinary domestic purposes, is it less reasonable or necessary to use fire to create steam for the use of the engine? It has not been claimed, that this company could, in any other way, effect

the object of their incorporation. It was, indeed, intimated, that the legislature could not authorize the company to do the act they have done. If by this is meant, that they could not authorize them to burn this building, without making compensation, it will not be denied. But it does not follow, that the legislature could not authorize an act, without which, in connexion with other incidents, this event would not have happened. The General Assembly authorize a company to erect a bridge over a stream; by the force of the winds a vessel or boat is driven upon one of the piers and bilged. Could it be seriously claimed, that the legislature could not lawfully cause this bridge to be erected, because accidents might occur? And how does this case differ from that? In both cases, an event has occurred injurious to a third person, which would not have happened, had not the bridge or the rail-road existed. Neither of which, however, of themselves, produced the effect. That the legislature could not take away the property of a citizen for public use, without compensation, is a fundamental principle. But to say that they can pass no act, which, in its remote consequences, and in connexion with other causes, may affect private property, is a refinement which has never been recognized. If this improvement was for a public object merely, and the defendants stood in the same light as commissioners acting *bona fide* in the execution of a public trust, then they could not be responsible, according to the cases of *Sutton* v. *Clarke*, 6 *Taun.* 29., and *Boulton* v. *Crowther*, 2 *B. & Cres.* 703. But as the defendants are to derive a personal benefit from these improvements, we do not place the case on that ground.

It was claimed, in argument, that there was a difference between original and derivative rights. Although this may be an ingenious distinction, it is supported by no authority; and, we think, it is not founded on principle. What is an original right to property? All rights to property, (unless those of the sturdy occupant are an exception,) are founded upon, and regulated by, the laws of the land. They are different in different countries; and, at different times, varying in the same country. They are are all derivative, depending upon political establishments; not natural, but civil, rights. 2 *Bla. Com.* 11. What principle, then, exists, by which a right, acquired by a special legislative grant, can be distin-

*Fairfield,*
June, 1842.

Burroughs
*v.*
The Housatonic
Rail-road Company.

*Fairfield,*
*June, 1842.*

Burroughs
*v.*
The Housatonic
Rail-road Com-
pany.

guished from a right acquired under the general law of the land, we have not been able to discover. We must, then, come to the result, that the acts of the defendants were lawful acts.

But lawful acts may be performed in such a manner, so carelessly, negligently, and with so little regard to the rights of others, that he, who, in performing them, injures another, must be responsible for that damage. Thus, the man who turns the water from his own premises, in such a manner as to flow upon and injure his neighbour's lands, ought to respond. So where, by the custom of the realm, the owner of a house, which takes fire, and burns another house, is made answerable for the damage, it proceeds upon the ground of negligence. *Tubervil* v. *Stamp,* 1 *Salk.* 13. And the action, as appears by the form, was grounded upon this negligence. S. C. 2 *Salk.* 726. So where one, whose duty it was to keep in repair sea walls, by his negligence in repairing them, suffered the water to overflow; he must answer for that neglect; though it would be otherwise, if it had happened by the act of God, and so unavoidably. 2 *Bulst.* 280. *Henly* v. *Lyme,* 5 *Bing.* 91. So if one pull down his own house, in so negligent and improvident a manner, as to produce unnecessary injury to his neighbour, he is liable therefor. *Walters* & al. v. *Peeil,* 1 *Moo. & Mal.* 362. In such case, the party must use ordinary and reasonable care. *Massey* v. *Goyner* & al. 4 *C. & Pa.* 161. *Jones* v. *Bird* & al. 5 *B. & A.* 837. So too, in the common case of running down ships at sea, or carriages on land, and the injury arises from a want of skill, or from negligence in the defendant or his servants. *Lack* v. *Seward,* 4 *C. & Pa.* 106. *Handaysyde* v. *Wilson* & al. 3 *C. & Pa.* 528. *Hawkins* v. *The Duchess and Orange Steamboat Company,* 2 *Wend.* 452. *Morley* v. *Gaisford,* 2 *H. Bla.* 442. On the other hand, when the party is in the performance of a lawful act, and the damage arises without any blamable conduct on the part of the defendant, he will not be responsible therefor; for where there is no wrong, there can be no liability in this action. In a recent case, even of trespass *vi et armis,* this principle is ably enforced, by Ch. J. *Williams,* in the supreme court of *Vermont,* where the court held, that a man who had injured the person of another, by driving upon him, was not responsible, if he could

not, with prudence and care, have prevented the injury. *Vincent* v. *Stinehour*, 7 *Verm*. 62.   In trespass, no man should be excused, say the court, in *Weaver* v. *Ward, Hob.* 134., unless it be utterly without his fault.

However it may be in trespass, we think that, in this action, the rule is, that some fault must be shewn in the defendant.   In case for obstructing a highway, Lord *Ellenborough*, Ch. J., says, "two things must concur to support this action; an obstruction in the road, by the fault of the defendant; and no want of ordinary care to avoid it, on the part of the plaintiff."   *Butterfield* v. *Forrester*, 11 *East*, 60.   And Judge *Buller* says, "every man ought to take reasonable care that it does not injure his neighbour : therefore, wherever a man receives any hurt, through the default of another, though the same were not willful, yet if it be caused by negligence or folly, the law gives him an action to recover damages for the injury so sustained."   *Bul. N. P.* 25.

Where, then, there is neither negligence nor folly, in doing a lawful act, the party cannot be chargeable with the consequences.   Thus, where the owner of land set fire upon his fallow grounds, which run into, and consumed, the plaintiff's woods, the defendant was held not to be liable, there being no negligence in him or his servants.   *Clark* v. *Foot*, 8 *Johns. Rep.* 421.   In a similar case in the state of *Maine*, it was holden, that the plaintiff must, on his part, prove negligence in the defendant.   *Bachelder* & al. v. *Heagan*, 6 *Shep.* 32. So where one building a house, sunk the foundation so as to undermine that of the adjoining proprietor ; it was held, that he was not responsible for consequential damages, if he used due diligence and care to prevent injury to his neighbour. *Panton* v. *Holland*, 17 *Johns. Rep.* 92.   The same principle, it is supposed, governed the court, in *Thurston* v. *Hancock* & al. 12 *Mass. Rep.* 220.   It is true, that a judge entitled to great respect, has suggested a doubt as to the last case. *Charles River Bridge* v. *Warren Bridge* & al. 11 *Pet.* 638., per *Story*, J.   Several of the cases cited above from the late *English* reports, seem to confirm the principal point in that case; and no authority has been brought by the plaintiffs, to support them in this case, except *Hooker* v. *The New-Haven and Northampton Company*, 14 *Conn. Rep.* 146. And, with us, that is certainly sufficient, (unless we are ready

*Fairfield,*
June, 1842.

Burroughs
*v.*
The Housatonic
Rail-road Com-
pany.

to retrace our steps.) if the plaintiffs are right in their construction of it.  But upon a careful review of that case, we are not able to discover any principle there laid down, which will justify the claim of the plaintiffs.

There, the defendants, under their charter, had constructed their canal, in such a manner, and placed their waste-wier so, that when the canal was full, the water would be discharged upon the plaintiff's meadows, to their great injury. It was not claimed, that the injury arose from an act of Providence, or from some unexpected calamity ; nor, that the canal could not have been, by additional waste-wiers, so constructed as to have avoided this result.  On the contrary, the injury was the natural and necessary result of the manner in which the canal was constructed.  Indeed, the very object of this waste-wier was, to protect the canal, at the risk of those around them.  14 *Conn. Rep.* 152.  It became, therefore, apparent, and it was not denied, that the defendants were liable, unless they were protected, by the act of incorporation ; and the claim was, that, as they were authorized to construct this canal, under the superintendance of commissioners, and as this waste-wier had been approved by these commissioners, the company were not responsible for any injury resulting therefrom, as individuals would be, in like circumstances.  The court held, that the act did not expressly grant such a protection ; and that such an implication could not arise upon a fair construction of the act : that, unless the intention of the legislature was clearly manifested, it was not to be supposed, that it was intended to authorize this company to violate the private rights of individuals, without making them compensation: and a doubt was suggested, whether, indeed, this could be done.  It was decided, that the defendants, in that case, were responsible for an act, voluntarily and deliberately done, which, in its immediate consequences, injured another, in the same manner as an individual would be, for a similar act.  In this case, the defendants only ask that the same principle shall be applied to them as to individuals.

The cases, then, differ in several important particulars. There, it was claimed, that the canal was not supplied with sufficient waste-wiers, and so was not properly constructed. Here, it is admitted, that all has been done, as the law

required.    There, it was claimed, that the injury might have been avoided, by a sufficient number of waste-wiers.    Here, the injury was unavoidable.    There, the act done was voluntary, and done for self-protection.    Here, it was involuntary. There, no individual could justify a similar act.    Here, the defendants only ask the same protection that an individual has.    We think, therefore, there is a manifest difference in the cases.

*Fairfield,*
June, 1842.

Burroughs
*v.*
The Housatonic
Rail-road Company.

There is another fact, in this case, which, perhaps, deserves notice.    The plaintiffs placed their building in the position it was, after this road was laid out.    The jury, it is true, have not found, that the injury happened by their negligence ; but this very fact shows, that very little danger was apprehended from the engine of this company, and strengthens the idea, that the injury was casual, unexpected, unavoidable.

Upon the whole, we think, that the defendants are entitled to a new trial.

In this opinion the other Judges severally concurred, except WAITE, J., who was of opinion that this case was not distinguishable in principle from that of *Hooker* v. *The New-Haven and Northampton Company.*

New trial to be granted.