Denio, C. J.
Tlie plaintiff owned and possessed a building, used as a storehouse, in Greenburgh, Westchester county, standing on the easterly side of the defendants’ railroad, and about sixty-seven and one-half feet from the track. It was in the charge of two of the plaintiff’s servants. The outer doors were-kept locked, and no fire was used in it. On the 7th February, 1852, it took fire and was consumed. It was proved that, about twenty-five minutes before the fire was discovered, a train of cars of the defendants, drawn by a locomotive engine called the Oneida, passed the place. On the first floor of the .building there was a parcel of shavings and a quantity of lumber, and some of the glass in the windows of that story had been broken. As I understand the testimony, the place where the fire was first seen was on this floor, and not far from, one of the windows. Having proved these facts, and that the day on which the fire took place was windy, the direction of the wind being towards the building, and the persons in charge having sworn that no person, to their knowledge had been in it during that day, the plaintiff proposed to prove, by a witness who lived close to the railroad and about one-fourth of a mile from the building, that shortly before it was burned he had seen sparks and *220 fire thrown, from the engines used by the defendants in running their trains, through the witness’ premises, a greater distance than this building stood from the track of the railroad, and that he had picked up from the -track after the passage of the trains, lighted coals more than two inches in length. The evidence was objected to by the defendants’ counsel and excluded by the court. The plaintiff’s counsel excepted. The plaintiff also gave evidence which, as his counsel insists, tended to show that the engines used by the defendants lacked some apparatus which was in use upon some other locomotive engines, and which rendered the latter less liable to commuicate fire to substances at the side, of the road than those which were without that apparatus. The judge, in the first instance, denied a motion made by the defeüdants for a nonsuit; but after the defendants had proceeded at some length in the examination of witnesses in their behalf, he stopped the further examination of a witness and -nonsuited the plaintiff.
It is argued by the defendants’ counsel that the evidence offered and rejected was too remote and indefinite to have a just influence upon the particular question in issue in the case; that it did not refer to any particular engine, and that it may be that the one which ran past the plaintiff’s premises, just before the discovery of the fire, was quite a different one from those which scattered fire on the occasion to which the evidence offered would apply. This argument is not without force; but at the same time I think it is. met by the peculiar circumstances of. this case. These engines run night and day, and with such speed that no particular note can be taken of them as they pass.' Moreover, there is such a general resemblance among them, that a stranger to the business cannot readily,distinguish one from another. It will, therefore, generally happen that when the property of a person is set on fire by an engine, the owner, though he may be perfectly satisfied that it was caused by an engine, and may be able to show *221 facts sufficient legitimately to establish it, yet be may be utterly ignorant what particular engine, or even what particular train did the mischief. It would be, practically, quite impossible by any inquiries to find out the offending engine, for a large proportion of those owned by the company are constantly in rapid motion. The business of running the trains on a railroad supposes a unity of management and a general similarity in the fashion of the engines and the character of the operation’. I think, therefore, it is competent prima facie evidence, for a person seeking to establish the responsibility of the company for a burning upon the track of the road, after refuting every other probable cause of the fire, to show that, about the time when it happened, the trains which the company was running past the location of the fire were so managed in respect to the furnaces as to be likely to set on fire objects not more remote than the property burned. It is presumed to be in the power of the company, which has intimate relations with all its engineers and conductors, to controvert the fiwt sworn to if it is untrue, or, if true in a particular instance, that it was not so in respect to the engines which passed the place, at a proper time, before the occurrence of the fire. The effect of the evidence would only be to shift the onus prohandi upon the company, and that, under the circumstances of this case, seems to me to be unavoidable. The rule respecting the onus often depends upon the special circumstances of the case, and it not unfrequently happens that- a party is obliged to establish a negative proposition. (C. & Hill's Notes, 490, and cases.) For instance, if it were proved to be universally true that the engines on the defendants’ road scattered fire upon both sides, so as to endanger property as near the track as this building was, and it was established, as was done in this case, that the property claimed to have been set on fire by the negligence of the defendants was actually burned without any known cause or circumstance of suspicion besides the engines; ir *222 woul l clearly be incumbent on the defendants to show that they were not the cause. The present case is .only less strong in degree. It was offered to be shown that a practice on the part of the company, which would have endangered this building, was indulged in about the time aiid near the place where the building was burned. That fact rendered it probable to a certain degree that the injury was attributable to that cause, but it left it in the power of the defendants not only to controvert the evidence generally, but to show that the special facts applicable directly to the occurrence of the fire were such as to overcome the general inference from the plaintiff’s evidence, and avoid the presumption which that evidence created. I am of opinion therefore that the judge erred in this ruling.
The evidence excluded had a bearing upon both branches of the case which the plaintiff undertook to establish. It not only rendered it probable that the fire was communicated from the furnace of one of the defendants’ engines, but it raised an inference, of some weight, that there was something unsuitable and improper in the construction or management of the engine which caused the fire.
It is unnecessary to express an opinion upon the case as it stood, without the evidence of which the plaintiff was deprived. It may be that, when the case is tried upon the principle indicated, it will present no question or a very different one from that which is now before us.
■ The judgment must be reversed, and there must be a new trial.
Hubbard, J.
The only question which I propose to consider is that relating to the exception to the exclusion of the evidence offered on the trial. This question is limited to the inquiry as to the competency of the proof, irrespective of its force or effect. It is not essential to determine the effect of the evidence upon the charge of negligence; it is enough if the same was competent for any purpose. I think *223 it was competent for the purpose of showing that sparks might have escaped from the defendants’ engine, and been borne by the wind to a distance from the railroad track equal to that of the mill-house jn question ; thus showing a possibility, and, in connection with other circumstances, a probability, that the fire originated in the manner alleged in the complaint.
The theory on the trial was, that the sparks or cinders causing the fire originated from the smoke-pipe or ash-pan of the engine Oneida, attached to a train of passenger cars which passed about twenty-five minutes before the fire was discovered. No other engine passing about that time, it may be assumed, for the present purpose, that if the defendants are responsible at all, the liability is chargeable to the Oneida as the offending engine. It was not proposed to show, on the trial, that sparks and cinders, capable of ignition, had been seen on other occasions to issue from the Oneida. Such evidence would have been clearly admissible, I think, from the necessity of the case. It generally, or frequently happens, as may have been the fact in this case, that engine sparks cause fires, without the sufferer being able to prove the fact by positive testimony. Circumstantial evidence must, of necessity, be resorted to, or injustice must be suffered, without redress, in very many instances.
The proof offered and rejected related to the emission of igneous matter by the defendants’ engines generally, without designating any one in particular. This evidence, I think, was competent, and should have been received upon the proposition whether the defendants caused the fire. It was a primary fact to trace the fire to the defendants, as a ground of liability. There is no pretence in this case that the construction of the Oneida, as it respects the emission of sparks or cinders, differed from that of every other engine used by the defendants on their road. It must follow, therefore, that under the same circumstances, the same amount of sparks and coals of fire would issue from every *224 other engine as from the Oneida. The proof offered was, therefore, practically the same as though it had been proposed to show that the Oneida frequently or generally made, emissions when running at the usual speed.
The competency of this evidence has been directly decided in the English'court of common pleas., (Piggott v. The Eastern Railway Co., 10 Jurist, 571; Aldridge v. The Great Western R. R. Co., 3 M. & G., 515.) These cases, upon this point, are well decided. The principle is essential in the administration of justice, inasmuch as circumstantial proof must, in the nature of things, be resorted to, and inasmuch as the jury cannot take judicial cognizance of the fact that locomotive engines do emit sparks and cinders which may be borne a given distance by the wind. The evidence was competent to establish certain facts which were necessary to be established in order to show a possible cause of the accident, and to prevent vague and unsatisfactory surmises on the part of the jury.
There was evidence given on the trial, relating to the question of negligence, but it need not be considered on this appeal. It may be . observed, however, that the gravamen of the action is negligence. In the proof of it, the same rule applies that does in the case of an injury to a passenger while riding in the cars. (Holbrook v. The Utica and S. R. R. Co., 2 Kern., 236.) Negligence involves the imputation of some wrongful or unauthorized act or omission of duty. It cannot be predicated upon an injury resulting from the performance of an act in itself lawful, and done in a proper manner. Such an injury is damnum absque injuria.
In my judgment, negligence cannot be inferred from the simple fact of causing the fire, for the reason that the use of fire to propel a railroad engine is lawful, and sparks and coals may escape, notwithstanding all the safeguards which modern improvement has suggested may have been adopted. (Burroughs v. Housatomc R. R. Co., 15 Conn., 124.) The general rule is that a party is not responsible for the *225 reasonable exercise of a right, unless on proof of negligence, unskilfullness or malice in the'exercise of that right. (The Phila. and Reading R. R. Co. v. Yeiser, 8 Barr., 366; 2 Am. Railway Cases, 325.) What is a reasonable exercise of a right must of course depend upon the facts of each particular case.
The judgment must be reversed and a new trial granted, costs to abide the .event.
A. S. Johnson, Selden and Mitchell, Js., concurred.
Comstock, T. A. Johnson and .Wright, dissented.
Judgment reversed.