THIS was an action on the case by James V. Jefferis against the Philadelphia, Wilmington and Baltimore Railroad Company, to recover damages for the burning and destruction of a barn and twenty tons of hay in it belonging to the plaintiff, near the line of the railroad of the *Page 449 
company in Brandywine hundred, and alleged to have been set on fire by flying coals or sparks emitted by a passing locomotive engine and train of cars of the company over the road just before the same was discovered to be on fire, by reason of the negligence and default of the defendant. It occurred about 2 o'clock P.M. on the 20th of March 1865, on a clear day with the wind blowing fresh at the time from the direction of the railroad toward the barn. There were two freight trains passing over the road in opposite directions about the time, and as there was a bridge just below the place on the road, the one had to stop for the other to pass beyond it, and which stop was near the barn, the nearest-corner of which was only about thirty feet from the line of the railroad. It was built of stone, was about forty feet square, and although the walls of it were good, it was old, and the roof of it which was shingle was much decayed and quite open with seams and cracks, and contained at the time about twenty tons of timothy hay stowed in the loft of it. The fire originated upon the roof of it, about two feet from the eaves of the gable nearest the railroad, and when first discovered had made but very little progress, and might readily have been extinguished without doing any further injury to it, had there been a ladder, or any other means at hand of ascending to it with a bucket of water. The keeper of the railroad bridge before mentioned, and his assistant were the first to perceive it, and at once gave the alarm and hastened to it for the purpose of putting it out. No one saw the fire communicated to it, or could state the actual cause or origin of it, but the witness who first discovered the fire burning on the roof, stated that the space then covered by it was not larger than her two hands, and when she reached the barn there was no fire inside of it, and that but a few minutes before she first saw the roof on fire, she heard a railroad train pass over the road and by the barn. It was also proved that sparks, and small coals were frequently emitted from the smokestacks of the engines of the company and had been seen flying high above their tops into the air, when passing over *Page 450 
the road, not only on that day, but as a matter of frequent and common occurrence, and that such coals or sparks had several times set fire to fences, grass, hay, wheat and other property along the road, and not less than three times, to the roof of the railroad bridge before mentioned. It was also proved by a patentee of one, that no spark-catcher had yet been invented which had proved effectual for the purpose, but that the company had tried many, and had provided its engines at the time with one of the best which had then been produced, and had exercised all practicable care and prudence to prevent the escape of either coals or sparks from their locomotives. The defendant also put in evidence the record of a writ of ad quod damnum and the proceedings thereon, sued out by the company in the year 1838, at the time of the location and original construction of the railroad on its present line through that section of the country, against the guardian of the plaintiff who was then a minor, to condemn and obtain the right of way for it across the farm on which the barn then stood, on the payment of the damages therefor to be assessed by the jury under the writ, and from the return of which it appeared that the jury had assessed the whole of the damages for the right of way across the farm, at the sum of $1800, and from which it also further appeared that included in that amount, the sum of $883, was specially assessed and allowed by the jury in consequence of the peculiar danger to which the barn in question would be exposed by reason of the location and construction of the road in such close proximity to it, and which aggregate amount of damages was paid soon afterward by the company to his guardian, and had been duly accounted for by him as such, to the plaintiff on his attaining his majority. The loss to the plaintiff by the destruction of the barn and its contents, was proved to be about $3000. The claim for damages was $4500.
T. F. Bayard, for the plaintiff. Sic utere tuo ut atienumlœdas non was the legal maxim which should apply in the *Page 451 
present case, as well as in all other cases. Employing the dangerous elements of fire and steam, as the company does in the daily transaction of its vast business, imposed upon it the duty and obligation of exercising the utmost care and vigilance and extreme prudence in the conduct and management of them, so as to avoid doing as far as may be possible, any injury to the property of others. It was, therefore, not sufficient for such a company and such a party to prove in a case like this, that it had always endeavored to provide its engines with the best and most approved inventions to prevent the escape of fire or sparks from them, and to prevent the destruction of valuable property, both real and personal, of those who have the misfortune to own such property near the line of their road; and who have, and can have, no possible means of protecting such property from such destruction. But it was also bound to show that they were kept in the best order and condition at all times. It had been ruled in a leading case in England on the subject, that the fact of property being set on fire by sparks emitted from a passing engine on one of the railroads in that country, was prima facie evidence of negligence on the part of the company, which made it incumbent upon it to show that some precaution had been adopted by it reasonably calculated to prevent such accidents. Piggot v. The EasternCounties Railway Company, 54 E. C. L. R. 228. As to the assessment of the damages under the writ of ad quod damnum to the plaintiff through his guardian in 1838, for the right of way through his farm and within thirty feet of the barn in question, with the special allowance by the jury of $883. under it, for the purpose of removing it to a more secure position on the premises, he had only to say that, as the proceeding was under a provision of the charter of the company for procuring the right of way for the construction of the road in such a case, in which it could not be obtained by agreement with the owner of the premises because of infancy of the plaintiff, it was a condition or qualification which they had no authority to prescribe or impose *Page 452 
under the writ upon any one, much less upon a minor, and it was, therefore, an absolute nullity in law; and it had been so decided by this court in the case of Vandegrift v. Del. R. R. Co. 2Houst. 287. But independent of that objection, the evidence in the case warranted him in saying that it was not true in point of fact, but that the special allowance indicated by the jury in their return was intended by them to meet the expense of removing a wooden building then adjoining the barn, and still nearer to the line of the projected railroad of the company, and which was in fact removed in a short time thereafter.
Gordon, for the defendant. If it had even been proved that the barn was burnt by a spark from an engine of the company, it would not be responsible to the plaintiff in damages for the loss of it, if it was the result of accident merely, and not the result of negligence on the part of the company or its servants. And to entitle the plaintiff to recover in the action, it was incubent upon him to prove to the satisfaction of the jury, first, that it was set on fire by a spark from an engine of the company, and secondly, that it was not accidentally communicated or wafted by the wind to the dry and decaying shingles seamed with cracks in the roof of it, but was so communicated to it by reason of the negligence and default of the defendant in not preventing the spark from reaching it. That, and nothing less than that, the plaintiff was bound to prove, or he could not be entitled to recover. The right of the company to operate their road by the only kind of engines ever used for such purposes, and which must necessarily be propelled by steam produced by fire, and to run them at the customanry rates of speed for which they were designed, and without which they would be comparatively worthless, and would soon be universally condemned by the public, was an inherent right conferred upon it by its charter; for it was necessarily contemplated and implied, if not expressed, in every act of legislation which creates a railroad company. And the first and fundamental principle of law *Page 453 
which applied in such a case, was that no action at common law would lie for the reasonable use of one's rights, although it may be to the injury of another; he will, however, be responsible for any injury to another which results from the negligent, unskillful and improper use of such legal right. Pierce on Am. R. R. Law, 311, 312. As negligence was, therefore, the gist of the action against a railroad company for injuries received from it while exercising its lawful right in using such engines, fires, furnaces and smoke-stacks, and no appliance had yet been invented, although many patents had been granted for the purpose, which had proved sufficient to entirely prevent the escape of either coals or sparks from them, the burden of proving it would lie on the plaintiff in this case. Pierce onAm.R. R. Law, 314, Burroughs v. Housatonic R. R. Co. 2 Am.Railway Cases, 30. P. R. R. R. Co. v. Yeiser, 2 Ibd,
325. Clark v. Foot, 8 Johns. 421. 15 Conn. Rep.
124. 8 Barr, 366. But on this point it had been proved that the company had always made particular efforts to provide its engines with the best and most improved inventions for preventing the escape of fire and sparks from them, and that they were all supplied at the time of the accident, with as good as any then known or in use on any of the railroads in the country. If, however, any negligence could, in fact, be imputed to the defendant on the occasion, and the loss and injury was at the same time attributable in any degree to negligence of the plaintiff in suffering the roof of the barn to become and remain so rotten, cracked and splintered, as to increase the liability of the shingles in a dry and windy day to catch and take fire from a spark falling upon it, or from his neglect to have, at least, a ladder at hand to ascend to it in case it should take fire, peculiarly exposed as he knew it then was to such an accident from its condition and position so near the railroad over which trains were passing every few minutes in the day, he would not be entitled to recover. Flinnv. P. W. B. R. R. Co. 1 Houst. 469. For a plaintiff suing for negligence, must himself be without default. Brown v.Maxwell, 5 Hill 592. *Page 454 
but admitting for the sake of argument, that the company was without any other defence in this case, the long neglect of the plaintiff to avail himself of the means specially assessed and awarded by the jury under the writ of ad quod damnutn, and to apply it to the particular purpose for which they intended it, the entire removal of the barn from its peculiarly dangerous proximity to the railroad, would of itself, constitute a complete defence to this action, for his failure to do it proved gross negligence on his part, as by it he might have removed, long since, all danger or possibility of the loss which he had at last incurred by declining to do it. He even seemed, under the circumstances and the imminent and increasing peril to which it had been constantly exposed in the meanwhile, to have almost courted it; but it proved more than that, and that was that to the amount so awarded to him for this very danger to which it would thus be exposed, he was both insured and indemnified in advance against the very injury and loss which he had at length sustained by the destruction of it in the mode then most apprehended by the jury, doubtless, if it be true, that it was set on fire in the mode alleged by him. That sum was awarded in 1838, and was soon after paid to his guardian, twenty-nine years ago, and he had had the benefit of both the capital and interest upon it ever since; and it would consequently seem to be but right and proper that the company should have a credit for it from that date, if the verdict should happen to be against it in such an unjust case as this had proved itself to be.
Bayard. The general principle of law was that whenever any person receives an injury, as the result of the negligence of another, he was entitled to recover at law compensation in the nature of damages for it. Bul. N. P. 25. And in a case-stated for the opinion of the Court of Common Pleas in England, in which the action was against a railroad company for so negligently managing their steam engine on their road that the sparks emitted by it set fire *Page 455 
to the property of the plaintiff, although it was used at the time in the ordinary manner and for purposes authorized by its charter, it was held that the facts were not sufficient to enable the court to infer negligence on the part of the company, so as to justify the entry of judgment for the plaintiff; but that they did not show such an absence of negligence on its part, as to warrant a nonsuit against him. Aldridge v. G. W. Railway Company, 42 E. C. L. R.
272.
that it was incumbent on the plaintiff to establish the fact to the satisfaction of the jury, that the defendants set fire to the plaintiff's barn by sparks emitted from their engine. And that if he failed to establish that fact, he could not recover. That, even if the plaintiff established that fact, still it remained also necessary for him to show by satisfactory proof, that the firing and destruction of the barn resulted from the carelessness or negligence of the defendants, their agents or servants. That the defendants were not answerable under all circumstances, or at all events; but were only answerable for their own default — that is, they were only answerable in such a case, for want of due care, skill, or diligence, in the transaction of their lawful business, and in the use of their engines in it, to prevent such accidents. That if the defendants on the occasion in question, had adopted the usual precautions in supplying their engines with such spark-catchers, as were in general use for preventing the escape of sparks, and employed competent engineers to manage their engines, and the engineers used reasonable care and diligence in the management of them, then the defendants did all that either the law, or enlightened reason required of them in such case. That the defendants had an unquestionable right to operate the road by engines propelled by steam generated, of course, by fire. That they were, therefore, in the lawful exercise of that right; but they were bound, at the same time, to use that right with due care and caution in respect to the rights and property of others. That if the defendants used *Page 456 
due care and caution in the running of their engines, and yet unfortunately the barn of the plaintiff was set on fire by sparks emitted from their engine and destroyed, the plaintiff would not be entitled to recover for the loss sustained by him, because the defendants, under such circumstances, would be without fault. That, as the case stood, negligence was a question of fact to be decided by the jury, according to the weight or preponderance of the evidence. That the sheriff's jury which assessed the damages under the writ of adquod damnum in the year 1838, had no power or authority to make a legal contract by their return, between the owners of the land and the defendants, imposing upon the former a legal obligation to remove the barn; but the jury, in case they should be of the opinion that the plaintiff was entitled to recover, might, in determining the amount of their verdict, take into consideration the fact which had been proved in the case by the receipts and guardian accounts of the guardian of the plaintiff, that the sum of $883. had been paid by the defendants to the said guardian in the year 1838, which sum the plaintiff and his co-heirs had got the benefit of, the same having been carried to their credit in said accounts, for the express purpose of "removing the barn out of the way of danger from fire from the engines." That whilst it was certainly true, as a general proposition, that a party who by his own negligence, contributes to the injury of which he complains, is held to be culpable and without remedy, yet the court could not apply this general rule in all its stringency to the case before them, and say that the mere omission of the plaintiff to repair or renew the roof of his barn, amounted to such a contributing to the injury, as to exempt the defendants from the necessity of using due care and diligence to prevent the communication of fire to the barn. That the proof before the jury disclosed the facts, that the roof of the barn was a very old roof — that at the time the fire was discovered, it was about the size of the witness' two hands — that when the witness was inside of the barn throwing water against *Page 457 
the roof to put the fire out, the smoke was coming through the roof, and that the witness could see the fire through the roof, it was so open. That the jury could, from these facts as deposed to by the witnesses, if they believed them to be true, form a pretty correct idea of the condition of the roof. And that whilst the court could not say that the omission of the plaintiff to repair or renew the roof, exempted the defendants from the necessity of using reasonable care and diligence, yet the jury in assessing the damages, might take into consideration the condition of the roof at the time the fire occurred, and also the fact that the plaintiff might have lessened the hazard or danger from sparks, by having made proper amendment of the roof, if the negligence of the defendants was the main and immediate cause of it under all the facts and circumstances proved.
 The plaintiff had a verdict for $2500. *Page 458