IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT FEBRUARY TERM, 1857.

---

### PETER TINSMAN *vs.* THE BELVIDERE DELAWARE RAILROAD COMPANY.

1. No action can be maintained for injuries resulting to individuals from acts done by persons in the execution of a public trust and for the public benefit, acting with due skill and caution, and within the scope of their authority.

2. But this principle does not apply to a private corporation authorized by the legislature to construct works of public improvement, by private capital for private emolument.

3. It will not be presumed that the legislature, in conferring authority upon a corporation to construct a work of public improvement for private emolument, and for this purpose to take private property upon making compensation, designed to exempt the corporation from liability for injuries resulting from their acts. The common law liability for such injuries remains.

4. Such corporations are vested with the sovereign power to take private property for public use, but are not vested with the sovereign's immunity against liability for damages resulting from their acts.

5. Public corporations are such as are created for *political* purposes. But a corporation is not public merely because its object is of a public character.

6. Over public corporations the legislature have an unlimited control to create, modify, or destroy at pleasure; but the grant and acceptance of a private charter is a compact which the legislature cannot violate.

7. The liability of the corporation for damages does not depend upon the question whether it is a public or private corporation, but whether the franchise is created for private emolument or exclusively for the public good.

8. A demurrer admits only the *facts* that are well pleaded, and not conclusions of law from the facts stated. Whether damages are remote and consequential, is a conclusion of law.

9. Where the complaint is that the defendants have constructed an embankment in a creek's mouth, in which the plaintiff has a right of storing, landing and rafting lumber for the use of his saw-mill, so that the water is prevented from flowing in its accustomed channel, and the plaintiff thereby deprived of the full enjoyment of his privilege, the injury to the right is the direct and immediate consequence of the act of the defendants, and the damages sustained cannot be denominated remote or consequential.

10. It will be no defence to an action for such injury, that the water flowing in the creek's mouth is the water of a public navigable river under servitude to the public interest, the regulation of which is vested in the sovereign power.

On demurrer to pleas.

Peter Tinsman brought an action of trespass on the case, in this court, against the Belvidere Delaware Railroad Company, to recover damages for an injury alleged to have been caused by the defendants in the construction of their road.

The plaintiff claimed the right to use the water of the Musconetcong creek, at and near its mouth, for the purpose of landing rafts, storing and securing logs, and rafting lumber for the use of his saw-mill, located on the bank of said creek, near to and above the defendant's road. Where the railroad crossed the creek, he claimed no right to the soil upon which the road was built; the only interest he claimed was the right to use the water for the purposes above stated.

At the time the injury complained of was alleged to have been done, the saw-mill and appurtenances, together with the right to use the water as aforesaid, were in the occupancy and possession of the plaintiff's tenants, being leased to them by him for a term of years. To recover damages for injury to the plaintiff's reversionary interest, this action was brought.

The defendants pleaded the general issue and two special pleas in bar. By the latter, they set up the defence that under their charter they had the right to build their railroad in the manner they had built it, and having acted in the most prudent, skillful and judicious manner, and within the scope of their authority, they were not liable for the injury complained of. The substance of these pleas and the facts sufficient for a full understanding of the case, are stated in the opinion of the court.

The plaintiff joined issue on the first plea, and to the two special pleas filed a general demurrer.

The cause was argued at June Term, 1856, before the CHIEF JUSTICE, and Justices OGDEN, HAINES and RYERSON.

*Richey*, with whom was *Randolph*, for plaintiff, insisted—

The second and third pleas of defendants are not good pleas in bar, as they neither confess or avoid the allegations in the plaintiff's declaration. 1 *Chitty's Pleading* 556, 557.

If the court, however, should consider the pleas sufficient, the defence attempted to be made under them is not good, according to the former decisions of this court. They allege that they built their road, in pursuance of an act of the legislature of this state, in the most prudent and skillful manner, without doing any unnecessary damage, and without any design to injure the rights of the plaintiff.

Admitting these allegations to be true, the defendants are still liable to the plaintiff for the damages which he has sustained. *Ten Eyck* v. *The Delaware and Raritan Canal Co.*, 3 *Harr.* 200.

An actionable nuisance may be caused by an act lawful in itself, when the nuisance complained of is the consequence merely of that act. *Delaware and Raritan Canal Co.* v. *Lee*, 2 *Zab.* 243.

An injury to private property, resulting from an act authorized by law, and done in pursuance of the statute, cannot be justified, unless the act was done on behalf of the government; and a statute is no bar to an action for the recovery of damages for such act. *Crittenden* v. *Wilson*, 5 *Cowen* 166 ; *Rogers* v. *Bradshaw*, 20 *J. R.* 735 ; *Basset* v. *Johnson*, 2 *Green's Ch. R.* 417 ; *Stephens* v. *Middlesex Canal*, 12 *Mass. R.* 466 ; *Sinnickson* v. *Johnson*, 2 *Harr. R.* 129.

Supposing defendants have constructed their railroad according to the rights and privileges granted them in their charter, and in doing so have injured the private property of the plaintiff, at common law the plaintiff can maintain an action for the full amount of the damages he has sustained. *Stephens* v. *Middlesex Canal*, 12 *Mass. R.* 466.

Although a license has been granted to the defendants in their charter to build their railroad, in the construction thereof they having injured the property of the plaintiff without any indemnity, they are liable in an action for the damages sustained. *Bacon's Abridgment, vol.* 7, " *Nuisance*," 235 ; *Charles River Bridge* v. *Warren Bridge*, 7 *Pick. R.* 344; 4 *Barn. & Adolph.* 30.

The legislature cannot grant the right to a private corporation to take away private property without remuneration.

The second and third pleas of defendants are therefore bad, and the demurrer should be sustained. *The People* v. *Platt*, 17 *Johns. R.* 202; *Ten Eyck* v. *Delaware and Raritan Canal Co.*, 3 *Harr. R.* 200.

*J. P. Stockton*, with whom was *Field*, for defendants.

1st. The damage is remote. A partial inconvenience in the exercise of an incorporeal right, which decreased the value of a reversionary interest to which it is appendant, occasioned by a slight diversion of the flow of the water in a public navigable river, caused by the construc-

tion of an embankment on their own land by a railroad corporation, while acting judiciously and cautiously in the exercise of powers granted, is *damnum absque injuria*, and the company are liable no further than it is expressed in the act of incorporation. *Sedg. on Dam.* 114 and 58; 2 *Greenl. Ev.*, § 256.

2d. Acts which would otherwise be a nuisance, may be justified by express provision of law; and any damage which may have arisen as a consequence of those acts which others might lawfully do in the enjoyment and exercise of their own rights is *damnum absque injuria*. *Angell on Tide Waters* 94; 2 *Roll. Ab.* 565; *Com. Dig.*, " *Action on the Case, Nuisance;*" *Spring* v. *Russel*, 7 *Greenl.* 273–4; *Comstock* 200; 2 *Railway Cases* 333; 2 *Heath* 93; 1 *Eng. Railway Cases* 555; *Rex* v. *Pease*, 4 *Barn. & Ad.* 30; *Bac. Ab.*, " *Nuisance;*" 1 *Am. Railway Cases* 30.

If a man build a house, and make cellars upon his soil, whereby a house newly built in an adjoining close fall down, no action lies. *Com. Dig.*, " *Nuisance.*" So it does not lie for the reasonable use of my right, *though it be to the annoyance of another*.

No act can be a nuisance until it becomes unlawful, and until unlawful it cannot be actionable.

3d. Where the grantees of a public franchise or their agents have not exceeded the power conferred upon them, and where they are not chargeable with want of due care, no claim can be maintained for any damage resulting from their acts: *actus legis nemini est damnosus*. Otherwise the absurdity would follow, that operations undertaken and conducted by virtue of the supreme authority are unauthorized in the view of the law, and lay a foundation for damages. *Sedg. on Dam.* 111 and note. This is the law in Massachusetts, New York, Connecticut, Maine, New Hampshire, and in England.

Pennsylvania. *Henry* v. *The Pittsburgh Bridge Co.*, 8 *Watts & Serg.* 85; *Lehigh Bridge* v. *Lehigh Nav.*, 4 *Rawle* 9; *Schooner* v. *Germantown Railroad*, 5 *Whart.* 256; *Phila-*

*delphia and Trenton Railroad Co.*, 6 *Ib.* 26; *Railroad Co.* v. *Heiser*, 8 *Barr* 366; *Coon* v. *Teiler*, 1 *Penn.* 467; *Monongahela Nav. Co.* v. *Coon*, 6 *Barr* 380, 382; *Rittenberger* v. *Chester Valley Railroad Co.*, 9 *Harris* 105.

New York. *Lansing* v. *Smith*, 8 *Cowen* 146; *Steele* v. *Inland Nav. Co.*, 2 *Johns.* 283; *Livingston* v. *Adams*, 8 *Cowen* 175; *Jermaine* v. *Wagoner*, 1 *Hill* 279; *Wagoner* v. *Jermaine, error*, 7 *Ib.* 357; *Graves* v. *Otis*, 2 *Ib.* 466; *Benedict* v. *Goit*, 3 *Barb.* 459; *Radcliffe* v. *Brooklyn*, 4 *Comst.* 195; *Gould* v. *Hudson River Railroad Co.*, 2 *Seld.* 536; *Parker* v. *Cutler Mill Dam, Maine Rep.* 20, 35.

Maine. 31 *Maine* 215; *Mason* v. *Kennebec and Portland Railroad*, 2 *Am. R.* 162; *Spring* v. *Russel*, 7 *Greenl.* 273; *Rogers* v. *Kennebec and Portland Railroad Co.*, 35 *Maine* 319.

New Hampshire. 7 *N. Hamp.* 35, *Piscataqua Bridge* v. *N. Hampshire Bridge*; 1 *Ib.* 339, *Lebanon* v. *Olcott.*

Massachusetts. *Callender* v. *Marsh*, 1 *Pick.* 418, 430; *Bos. and Rox. Mill Corp.* v. *Newman*, 12 *Ib.* 467; *Water Power Co.* v. *Railroad*, 16 *Ib.* 512, 123; *Ib.* 360; *Stowell* v. *Flagg*, 11 *Mass.* 364; *Stevens* v. *The Middlesex Canal Co.*, 12 *Mass.* 466; 3 *Metc.* 380; *Parker* v. *Boston and Maine Railroad*, 3 *Cush.* 108; *Rowe* v. *The Granite Bridge Corp.*, 21 *Pick.* 348.

Vermont. *Hatch* v. *The Vermont Central Railroad Co.*, 25 *Vermont* 47; *Richardson et al.* v. *The Vermont Central Railroad Co.*, 25 *Ib.* 465.

Connecticut. *Hollister* v. *Union Co.*, 9 *Conn.* 436; *Hooker* v. *N. H. and Northampton Co.*, 14 *Ib.* 146; *Borroughs* v. *Housatonic Railroad Co.*, 15 *Ib.* 124; *Bradley* v. *The N. Y. and N. Haven Railroad Co.*, 21 *Ib.* 294.

England. *King* v. *The Severn Wye Railroad*, 2 *Barn. & Ad.* 646; *Governor, &c., of Cast Plate Manuf.* v. *Meredith*, 4 *T. R.* 794; *Sutton* v. *Clark*, 6 *Taunt.* 29; *Mystery of Grocers* v. *Downe*, 3 *Scott* 356; *Boulton* v. *Crowther*, 4 *D. & R.* 195; *King* v. *Com. Sewers*, 8 *B. & C.* 355; *Queen* v. *Eastern*

*Counties Railway*, 1 *Gal. & Davison* 589; *Bennett and Albourn Canal Co.* v. *Witherspoon*, 11 *Eng. L. and Eq.* 472; *Boulton* v. *Crowther*, 2 *Barn. & Cress.* 703; *Lister* v. *Lobly*, 7 *Ad. & El.* 124; 2 *Nevill & Man.* 340; 3 *Ad. & El.* 543; 4 *Barn. & Ad.* 30; 1 *Eng. Railway Cases App.* 551, *Am. ed.; Ramsden* v. *The Manchester South Junc.*, 5 *Eng. Railway Cases* 552; 3 *Nev. & Man.* 622; *Brown* v. *Clegg*, 6 *Eng. L. and Eq.* 334.

See, also, *Angell on Tide Waters* 92; *Sedgwick on Damages* 31 and 111.

*The Delaware and Raritan Canal* v. *Lee*, 2 *Zab.* 243, is cited as an anomaly. See *Sedgwick on Damages* 111, *note*. *The Bordentown and South Amboy Turnpike Co.* v. *Camden and Amboy Railroad Co.* is cited as sustaining the position. This latter case reduces the case of *Ten Eyck* v. *The Del. and R. Canal Co.*, 3 *Harr.* 200, to an absurdity. See *Burroughs* v. *The Housatonic Railroad Co.*, 2 *Am. Railway Cases* 30; 15 *Conn.* 124.

4th. The legislature may and do delegate to corporations, established for the accomplishment of projects from which they contemplate deriving profit, a portion of the sovereign power. This is not done otherwise than in the notion that it contributes to the public good, and a corporation invested with it being the *locum tenens* of the state, while exercising the power granted judiciously and cautiously, is liable to consequential damage to private property no further than it is declared to be so in the act of its incorporation. *Sedgwick on Damages* 111; 1 *Shelford on Railways, Am. ed.*, 331; *Angell on Tide Waters* 92; *Rowe* v. *The Granite Bridge Co.* 21 *Pick.* 348.

Statutes are public and private, but not corporations.

Corporations are aggregate and sole, ecclesiastical and lay, and lay are civil and eleemosynary. 1 *Kyd on Corporations* 19; 1 *Blackstone's Com., by Hargrave*, 469; *Bacon's Ab.*, " *Corporation*," *A.*

On the authority of the Dartmouth College case, there

has been an attempt to classify corporations as public and private, but the doctrine of the case sustains no such division in the sense proposed. It may be inferred from that case that a grant of incorporation to a body not intended exclusively for public political purposes, and under which individual property has become vested, does not necessarily carry with it the sovereign's immunity ; for it may not be clothed with sovereign power as an eleemosynary corporation. It may not be necessary to grant the right of eminent domain for the purpose for which it is incorporated. But whether so clothed with sovereign power or not, as against the grantors, the charter is a contract, and as private rights are vested under it, the state cannot violate them, except for public purposes.

It is private, because private rights are vested therein. But it may be at the same time clothed with public authority, and protected with the sovereign's immunity in the exercise of that power. The distinction is clear. *Ang. & Ames on Corp.* 9 ; 4 *Wheat.* 668.

A private corporation is not, then, one incorporated for private purposes ; it may be for the regal government of a foreign company, and yet be private, because private rights have become vested under its charter. But in the exercise of the royal prerogative granted, it would surely have the sovereign's immunity. This is all we claim. *Angell on Tide Waters* 98 ; 2 *App.* 353 ; 1 *Shelford on Railways* 331 ; 1 *Am. Railway Cases* 162 ; 1 *Shelford on Railways* 350 ; *Ib.* 432 ; 2 *Railway Cases* 325 ; *Sedg. on Damages* 111 ; *Rogers* v. *Kennebec, &c.*, 35 *Maine ; Bradley* v. *The N. Y. and N. H. Railroad Co.*, 2 *Railway Cases* 145 ; 21 *Conn.* 294 ; *Hatch* v. *The Vermont Central*, 25 *Verm.* 47 ; *Hollister* v. *Union Co.*, 9 *Conn.* 436 ; *Burroughs* v. *The Housatonic, &c.*, 2 *Railway Cases* 30 ; *Lansing* v. *Smith*, 8 *Cowen* 146 ; *Radcliffe* v. *Brooklyn*, 4 *Comstock* 195 ; *Rittenberger* v. *Chester Valley Railroad*, 9 *Harris* 105, say the principle is well settled ; *Monongahela* v. *Coon*, 6 *Barr*

380 ; *Callender* v. *Marsh*, 1 *Pick.* 418 ; 3 *Metc.* 380 ; 3 *Cush.* 108 ; 7 *N. H.* 35.

It is private, not with reference to its powers, for they are authorized to take private property, and this cannot be for private purposes, or in the exercise of any power but the sovereign's. But private as against the grantors of the public power, because the private right in the public authority and immunity granted defies even the sovereign power. So where a public corporation is empowered to hold private property, such property is at once invested with the securities of private rights. 2 *Kent* 274.

See, also, 6 *Eng. Railway Cases* 559, by Lord Truro. " No action will lie for damages for the execution of parliamentary powers cautiously and judiciously." See, also, *Gray* v. *Liverpool and Bury Railroad Co.*, 4 *Eng. Railway Cases* 240 ; *Rex* v. *Pease*, 4 *Barn. & Ad.* 30 ; 1 *Eng. Railway Cases* 555 ; 1 *Shelford on Railways* 75, 76.

By statute 8th and 9th *Vict.*, c. 18, damages are given for lands taken or injuriously affected. Our courts should not attempt to help defective legislation.

If the right were given in the statute, and no remedy provided, the common law would apply one. The act, by granting the sovereign's power, takes away the common law action ; and the only question is, how far and for what are they made liable by statute.

5th. The proceeding being legal by statute, the common law remedy fails. It is an affirmative statute, introductory of a new law. It directs a thing to be done in a certain manner, and it can be done in no other manner.

A railway company, while acting in the scope of its authority, cannot be a trespasser or wrong-doer, otherwise one of the consequences would be that the party injured could enter and abate.

6th. The act is constitutional. The legislature can legally and constitutionally do an act, or authorize another to do it, which in its consequences impairs the value of private property without compensation. 1 *Shelf. on*

*Railways* 444; *Lansing* v. *Smith*, 8 *Cowen* 146; *Angell on Tide Waters* 36; 4 *Comst.* 205; 25 *Verm.* 49; 4 *Dana* 154; 2 *Am. Railway Cases* 145, 157; 8 *Watts & Serg.* 85; 2 *Seld.* 534. In Gould *v.* The Housatonic Railroad Co., a riparian proprietor was cut off from the water without his consent, and it was held *damnum absque injuria.*    6 *Wharton* 109; 21 *Conn.* 294; 9 *1 b.* 436.

7th. The third plea may be defended on this additional ground.

All the injury charged is caused by preventing the water from flowing in its ordinary channel; that water is the navigable water of the river Delaware. The absolute right of a state to control navigable waters is an attribute of sovereignty; it is restrained only by constitutional restriction    Personal convenience must undoubtedly be subservient to considerations of public expediency, of which the representatives of the public, the legislature, are the sole judge.    *Angell on Tide Waters* 87, 96, 92, 98; *Parker* v. *The Cutler Milldam Corporation,* 20 *Maine* 353; *Spring* v. *Russel,* 7 *Greenl.* 229; 6 *Wharton* 109; 6 *Watts and Serg.* 101; 2 *Seld.* 537; 35 *Maine* 319; 14 *Serg. & R.* 71; 21 *Pick.* 348; 9 *Conn.* 436; *Attorney-General* v. *Hudson River Railroad Co.,* 1 *Stockton* 526, and *Attorney-General* v. *Newark Plank Road Co.* 754; *Rundle* v. *The Del. and Raritan Canal Co.,* 14 *Howard* 80.    See, also, 6 *Barn. & Cress.* 556; *Bac. Ab., last Am. ed.,* 227, " *Nuisance ;*" 15 *Jur.* 855; 20 *L. J. Q. B.* 322.

If the navigation is injured, it is within the power of the state to do it.    But on this plea, the presumption is that it was benefited, and this benefit to navigation from authorized acts cannot be the subject of damage.

A benefit to one highway will justify injuring another.    1 *Eng. Railway Cases* 555.

Railroads are authorized to impair navigation by bridges over navigable rivers.    In our own state, the right of the state to authorize an erection for such a purpose, which

would without authority of law be a nuisance, has been well settled in our highest courts. 1 *Stock.* 754, 526. No injury is charged, except such as is alleged to have been caused by the change of the flow of the water, and the plea alleges all the water to be public water, and that the change was for the benefit of navigation.

The only point on this plea is, whether the legislature had a right, for the purpose of making a public highway, to authorize a slight change in the flow of a public navigable river, which benefited the navigation thereof.

The CHIEF JUSTICE delivered the opinion of the court.

This action is brought to recover damages for injuries done to the reversionary interest of the plaintiff in certain real estate by the construction of a railroad by the defendants. The first plea, which is the subject of demurrer, states the following facts, by way of defence to the action.

The defendants were incorporated by an act of the legislature of this state, and by the said act were authorized and invested with all the necessary rights and powers to lay out and construct a railroad from Belvidere to Trenton. The road so authorized was declared to be a public highway. It was located and constructed in compliance with the requirements of the law. In locating and constructing the road, with its necessary appendages, of which the embankment specified in the plaintiff's declaration was one, the defendants did no unnecessary damage to the rights or property of the plaintiff. The road, with its necessary appendages, was constructed in the most prudent and skillful manner, in pursuance of the provisions of the law, for a public highway, without any design to injure the rights of the plaintiff. The defendants did not take possession of or occupy any land of the plaintiff, nor did they construct the said road or embankment upon or over any land of which he was seized. But of necessity, and in order to carry out the requirements

of the act, the said embankment was erected on land acquired by the defendants by virtue and under authority of the act. The damages complained of are remote and consequential, and done by authority of the statute.

The second plea demurred to contains substantially the same statements with the additional averments, that the Delaware river is a public highway, and that the water flowing in the creek's mouth is the navigable water of the river Delaware, under servitude to the public interest, the regulation of which is vested in the sovereign power.

The demurrer admits the *facts* thus stated. For the purpose of this argument, they must be taken to be true. This legal principle is the more distinctly adverted to, because when this cause was before the court on a former occasion, upon demurrer to the declaration, it was underderstood that the road was located, and the embankment constructed upon the land of the plaintiff, of which he was seized, and of which his tenants were in possession. Such appears to be the plain import of the declaration; and the opinion of the court was, to some extent, based upon that understanding of the fact. 1 *Dutcher* 255. The plea, however, avers the fact to be otherwise. The truth now appears to be, as stated by counsel upon the argument, in entire consistency with the averments of the plea, that the plaintiff's mill is situated upon the creek, at some distance from the river and from the creek's mouth; that the plaintiff does not own the land at the creek's mouth, either the bed of the creek, or the banks, but that he holds, either by purchase from the owner or by reservation when he parted with the title to the land, the right of floating lumber in the creek's mouth, and of securing, storing, and rafting it there for the use of his saw-mill. The plaintiff's right, therefore, the injury to which constitutes the ground of complaint in this action, is an interest in the land of another, an incorporeal hereditament appurtenant to his mill. It is neither an injury to the plaintiff's own land, nor to his right of landing

lumber upon the shore of a public navigable river, which forms the subject of complaint, and which the defendant's pleas are designed to justify. With this statement of the facts, intended to guard against misapprehension and to show the applicability of the opinion proposed to be expressed, we proceed to examine the legal positions upon which the defence is based.

The first general proposition upon which the defendants rely is, that whenever a corporation or individuals act in the due execution of powers conferred upon them by the legislature for the erection of works of public improvement, no action of *tort* can be maintained against them for any consequential damages arising from the execution of such work while acting judiciously in the exercise of the powers granted.

The principle is perfectly well settled, that no action can be maintained for injuries resulting to individuals from acts done by persons in the execution of a public trust and for the public benefit, acting with due skill and caution and within the scope of their authority. *The Governor, &c.,* v. *Meredith,* 4 *Term R.* 794; *Sutton* v. *Clark,* 6 *Taunt.* 29; *Boulton* v. *Crowther,* 2 *Barn. & C.* 703; *Radcliffe's Ex'rs* v. *Mayor, &c* , *of Brooklyn,* 4 *Comst. R.* 197.

The principle has been applied to acts done by commissioners for paving streets by trustees under a road act, and to persons executing similar public trusts for the public benefit. And it is insisted that, inasmuch as the railroad is declared by the charter a public highway, as it is constructed for the public benefit by authority of public law, the company are entitled to the benefit of the exemption.

This question was very elaborately discussed by counsel, and decided by this court in the case of *Ten Eyck* v. *The Delaware and Raritan Canal Company,* 3 *Harr.* 201. It was there held that the Delaware and Raritan Canal Company were not a public corporation, and that their charter does not justify them in injuring the property of indivi-

duals by obstructions of the natural flow of streams of water, although such injuries may be remote or consequential. We do not understand it to be denied by counsel, that if that case is law, it rules the present. The charters of the two companies are, so far as they affect this question, substantially if not identically the same. The pleas present the same grounds of defence, except in some particulars that will be hereafter noticed, and the questions were directly decided. The same points were raised and decided in the case (not reported) of Vandervere v. The Delaware and Raritan Canal Company upon similar issues. The latter case was removed to the Court of Appeals, and was affirmed at February Term, 1843, by a divided court. Those decisions have not been called in question, and have been regarded as the law in this state. We do not see that the present defence can be sustained without overthrowing them. The case might rest, therefore, upon the doctrine of *stare decisis*. As it is insisted, however, that those decisions are in conflict both with sound principle and authority, the grounds upon which they rest may with propriety be re-examined.

The position that a corporation authorized to construct public highways, or other works of public improvement, are vested with the immunities that pertain to the sovereign, and are exempt from liability to damages for injuries done to individuals in the exercise of that power, cannot be sustained upon grounds of reason or justice. That the individual is entitled, in justice and equity, to remuneration, has never been denied. It is a principle of natural as well as constitutional law, that private property can be taken for public use, by virtue of the eminent domain, only upon just compensation. And in regard to that class of injuries not falling within the pale of the constitutional provision, at least where the injury is direct, it is admitted that the party injured, upon the principles of natural justice, is entitled to reparation. But it is insisted that the injury is not the subject of an action

at law; that the remedy must be by appeal to the justice of the sovereign; and that, as between the corporation and the state, the state by whose authority and on whose behalf the injury was done, and not the corporation who were the mere agents in the transaction, should respond for the injury. There is a class of incidental injuries, it is true, resulting from the execution of public works, which must be borne by the individual for the public good, and for which he is entitled to no redress; but the injury of which the plaintiff in this case complains will not be found within that category.

Assuming, then, the claim of the plaintiff for indemnity for the injury sustained to be founded in natural justice, to whom is he to look for redress? It must be, of necessity, either to the corporation by whom the work was done that occasioned the injury, or to the legislature who authorized it. Now no party injured under similar circumstances ever has, and it may be safely affirmed that no one, with the least prospect of success, ever will apply to the legislature for redress. The answer that would be given is obvious. This work was not done by the state nor by the agents of the state, nor is the profit resulting from it to enure to the treasury of the state. It was done by a private corporation, acting in their own behalf, for their own benefit, and for the interest of the individual stock-holders. True, they were invested with such portion of the sovereign power as enabled them to construct the road. They were authorized, in virtue of the right of eminent domain, to take private property, so far as was essential to the completion of a work of public improvement, and thus far we provide strictly for remuneration. Nor was this done at the instance or by the command of the state. The right to construct the work was solicited as a boon; it was paid for as a privilege. It was entered upon as a private enterprise for private emolument. The work was begun, carried on and completed by the parties interested, for their individual interest, not as the

agents of the state or primarily for the public benefit. True, the public were incidentally benefited, and so they would have been by the erection of wharves, or store-houses, or manufactories, or any other important private enterprise. If it should be suggested by the applicants for relief, that highways are improvements which the sovereign power are bound to provide, the answer would be, true and we did make provision for their construction; but individuals undertook, at their own instance, for their own benefit, and upon their own responsibility, to execute the work. We are neither responsible for the cost of executing it, for the manner of executing it, nor for injuries resulting from its execution. We are, in equity and justice, no more responsible for injuries inflicted upon individuals in the execution of the work, than for the materials employed in its construction, or for injuries resulting by defective construction or careless management. And well-settled legal principle, no less than natural justice, would sustain the legislature in such a reply to the application.

Speaking of the principle, already adverted to, that a public agent, in the execution of a public trust for the public benefit, while acting judiciously within the scope of his authority is not liable for damages, Chief Justice Gibbs said the case is perfectly unlike that of an individual who, for his own benefit, makes an improvement on his own land. The resemblance fails in the most important point of comparison: the work is not done for a public purpose, but for private emolument. *Sutton* v. *Clark*, 6 *Taunt.* 29.

In *Boulton* v. *Crowther*, 2 *Barn. & Cress.* 703, Littledale, J., states the rule thus: where an act of parliament vests a power in trustees or commissioners, to be exercised by them not for their own benefit, but for that of the public, and gives no compensation for a damage resulting from an act done by them in the execution of the power, the legislature must be taken to have intended that an indi-

vidual should not receive any compensation for the loss resulting to him from an act so done for the public benefit.

In *Burroughs* v. *The Housatonic Railroad Co.*, 15 *Conn.* 124, 2 *Am. Railroad Cases* 35, Ch. Just. Williams, speaking of a railroad, says: if this improvement was for a public object merely, and the defendants stood in the same light as commissioners acting *bona fide* in the execution of a public trust, then they could not be responsible, according to the cases of Sutton *v.* Clark and Boulton *v.* Crowther. But as the defendants are to derive a personal benefit from these improvements, we do not place the case on that ground.

The same principle will be found in *Bailey* v. *The Mayor of New York*, 3 *Hill* 531.

But, aside from the merits of the question, it is insisted that this action cannot be sustained upon legal principles, inasmuch as it is founded upon a *tort;* and an act which is authorized by law cannot be a legal wrong. The principal on which the position is founded is certainly true. The action is founded upon a wrong. If, says Buller, J., the thing complained of were lawful at the time, no action can be sustained against the party doing the act. 4 *Term R.* 797. Legal liability, the imputation of the civilians, is founded upon *culpa*, or legal fault. *Sedgwick on Dam.* (2d ed.) 113. And how, it is asked, can that be unlawful which the legislature has expressly authorized? How can that be a legal fault which is done strictly within the scope and letter of the law? Every nuisance is unlawful, and it is a legal solecism to speak of a lawful act being a nuisance.

In *Radcliffe* v. *The Mayor of Brooklyn*, 4 *Comst. R.* 200, Mr. Justice Bronson stated the principle, as a ground of justification for injuries, in the broadest possible terms. He said " an act done under lawful authority, if done in a proper manner, can never subject the party to an action, whatever consequences may follow." As applied to the

case then under consideration, the principle was a clear
ground of justification, for that was a case of consequential
damages resulting from grading a public street under au-
thority of a municipal corporation.   And it is certainly
true that such act, if done under lawful authority and in
a proper manner, never can subject the party to an action.
But as applied to acts done by individuals not for the pub-
lic but for private benefit, the principle is stated too
broadly.   An act in itself perfectly lawful becomes un-
lawful from its effects upon the rights of others.   The do-
ing an act in itself lawful does not in all cases exempt the
actor from liability for the injurious consequences of that
act to others.   A man must exercise a lawful authority,
and so enjoy his own rights, as not to encroach upon the
rights of others.   It is perfectly lawful to erect a dam
upon one's own land, yet the builder is answerable if by
it he throws the water back upon the land of his neigh-
bor.   It is lawful to erect a building upon one's own
ground, yet the builder is answerable if it occasion a nui-
sance to the adjoining proprietor.   The consequences of
the act render it so far unlawful, no matter with what care
the work is done.   The act of the legislature gave the de-
fendants no more absolute right to build the road in ques-
tion than the common law gives every man to build upon
his own ground.   The act becomes unlawful in the one
case precisely upon the same principle and to the same
extent as in the other.   If it be said that it is not the build-
ing of the dam or the house that constitutes the nuisance,
but it is throwing back the water upon another's land or
stopping his lights that makes the act illegal; that the
complaint is not that he used his own rights, but that he en-
croached on the rights of others; the same is equally true
of the injury here complained of.   The plaintiff does not
complain that the defendants built their embankment
merely, but he complains that in so doing they injured his
property.

But it seems to be supposed that there is some virtue

in the fact that the legislature have, in express terms, authorized the very act complained of. It is not pretended that in terms they authorized the injury of which the plaintiff complains to be inflicted, but they authorized the work to be done from which injury has resulted. Now if the act had authorized the work to be done, and had at the same time declared that the act should not be construed to exempt the defendants from liability for injuries occasioned in the doing of the work, their legal liability could not be questioned. The act would be lawful, but the defendants would be liable nevertheless for the consequences of the act. The statute in such case would not create the liability of the defendants for damages for injuries inflicted; it would simply leave their liability as it stood at common law, unaffected by the statute. And that consideration presents this question in its true aspect. Did the legislature intend, by passing the act in question, to exempt these defendants from responsibility for injuries inflicted in executing the work? Admit that the legislature might lawfully have granted such exemption, admit that the injury inflicted is not within the protection of that clause of the constitution which prohibits the taking of private property for public use without just compensation, was it the intention or within the contemplation of the legislature to exempt the defendants from liability for injuries inflicted in the execution of the work? It would have been easy for the legislature to declare, in express terms, that in the construction of the work the corporation should be regarded as the agents of the state, and that they should not be liable for damages resulting from the execution of the work. Can any one imagine that the legislature would have granted a charter containing such a clause? And yet this court are asked to do, by judicial construction and by the application of technical rules, what it is obvious the legislature never would have done, and never designed to do, viz., to deprive the party of his common law remedy for injuries sustained. The

Tinsman v. The Belvidere Delaware Railroad Co.

legislature have manifested no such intention. None such can be implied: first, because statutes in derogation of common law rights are to be strictly construed, and we are not to infer that the legislature intended to alter the common law principles further than is clearly expressed, or than the case absolutely required. 2 *Harr.* 144; 11 *Mod.* 149; *Dwarris on Stat.* 695. Second, because it would be contrary to natural justice and equity to permit private individuals to construct a work for their own benefit, and not hold them responsible for all damages done to private property by them in the execution of that work. Third, because it is against the spirit, if not within the letter of the constitution, which prohibits private property to be taken for public use without just compensation.

In an opinion of Mr. Justice Littledale, already cited, he places the exemption of public agents executing public trusts from liability for damages, on the ground that, where the act gives no compensation, the legislature must be taken to have intended that no compensation should be received for loss resulting to individuals for acts done in pursuance of the law for the public benefit. A different rule of interpretation would apply where the act is done by private individuals or by a corporation for their private benefit.

And in *The King* v. *Pease*, 4 *Barn. & Ad.* 30, the court put the exemption of a railroad company from liability to indictment for nuisance, upon the ground of the absence of any implied condition or qualification to the authority given in the act.

Looking, then, either to the words of the act itself, or to the intent of the legislature as a guide in the interpretation of the powers and privileges conferred, we find nothing to warrant the position, that the defendants are exempt from liability to damages for injuries done by them in the execution of the powers conferred by the statute. They are vested with the sovereign power to take private property for public use, but they are not clothed

with the sov,ereign's immunity for damages by reason of their acts.

Upon the question whether a party can be held liable in *tort* for an act expressly authorized by the legislature, the case of *Sinnickson* v. *Johnson,* 2 *Harr.* 129, is an authority. In that case it was held that a statute of this state, which authorized John Denn, for his own accommodation, to change the course for Salem creek, a navigable stream, and provided no remedy for damages to meadow land occasioned by the execution of the work, was no defence to an action for such damages. That case, in many of its features, was analogous to the present. The injury complained of was the impeding of the flow of the tides and currents in Salem creek, so as to obstruct the sluice gates and water works of the plaintiff's meadow adjacent to said creek, and prevent the water from running off and draining from the said meadow, as it was accustomed to do. The defendant pleaded that the work which occasioned the injury was authorized by statute; that its object was to shorten the navigation of Salem creek, a navigable stream; and that the work was done in pursuance of the requirements of the statute, and so as to accomplish the purposes contemplated by the act. It was held, by the unanimous judgment of the court, that the plea constituted no defence to the action. The same view was taken of the question in the Court of Chancery, by Vroom, Chancellor. "If," said the Chancellor, "in the erection of this dam, or stopping of the water, injury is done to private property, the defendants are answerable in damages to the party injured. It cannot be supposed that the legislature, in authorizing the construction, mainly if not entirely for private accommodation and benefit, intended to exempt the grantor or his assigns from all legal liabilities. Such a proposition could meet with no favor at the hands of any court, and least of all from a court of conscience." 2 *Harr.* 138.

In *Crittenden* v. *Wilson, Cowen* 165, the Supreme Court

of New York held that an act authorizing one to build a dam upon his own land, upon a creek or river which is a public highway, merely protects him from an indictment for a nuisance. If, say the court, there had been no express provision in the act for the payment of damages, the defendant would still have been liable to pay them. The effect of the grant is merely to authorize the defendant to erect a dam, as he might have done if the stream had been his own, without a grant. In such a case, he would have been responsible in damages for all the injury occasioned by it to others. In the cases last cited, the act was passed for a merely private purpose, but they are direct and express authority upon the point now under consideration.

It cannot be denied that a different view of the law has been adopted in several cases by high judicial authority, and is sustained by much force of reasoning. A late eminent elementary writer states the general rule to be, that where the grantees of a public franchise or the public agents of government have not exceeded the power conferred on them, and when they are not chargeable with want of due care, no claim can be maintained for any damage resulting from their acts; otherwise the absurdity would follow, that operations undertaken and conducted by virtue of the supreme authority are unauthorized in the view of the law, and lay a foundation for damages. The proper light in which to regard the matter is, to consider the grantee of the franchise, or the public agent, so long as he does not transcend the authority conferred on him as representing the government, and the government as acting under its right of eminent domain, subject, of course, to its liability to make compensation, and to that liability only. *Sedgwick on Dam.* 110, 111. The same view of the law will be found to be sustained by several of the authorities cited in the note, and also by the cases collected in 1 *Shelford on Railways (Am. ed.)* 432, *note* 1 ; 1 *Am. Railway Cases* 166, *note* 1.

These authorities place the grantees of public franchises upon the same platform with the public agents of government. They maintain that corporations holding grants of public franchises are not only vested with the sovereign right of eminent domain, but possess, also, the sovereign immunity against liability for damages. If this be the law, then, wherever authority is granted by the legislature to a private corporation or to an individual to construct a railroad, a canal, a turnpike, a bridge, a raceway for manufacturing purposes, or any other work which the spirit of speculation may prompt and the legislature may conceive will prove conducive to the public good, private property may not only be taken against the will and consent of the owner upon making compensation, but however ruinous in its consequences the work may be to individuals, no redress can be had for damages resulting from their acts. Such, as we have seen, has not been the rule of law adopted in this state, and such we believe never to have been within the contemplation of the legislature in passing these acts. The whole reason assigned for adopting this rule, in itself manifestly unjust and inequitable, is, that otherwise the absurdity will follow, that an act authorized by law lays a foundation for damages. But where is the absurdity in supposing that the legislature intended, by virtue of their sovereign power, to confer upon the corporation authority to take the land necessary to construct the road, to do precisely what they might have done if they had owned the land necessary for that purpose, leaving their common law liability precisely where it would have stood if the work had been constructed upon the lands of the corporation, without the aid of the statute?

So far as the rule applies to public agents of government and to a certain class of remote and consequential damages, the validity of the rule is not questioned. And thus far the authorities are clear and in accordance. The character of consequential injuries, for which no damages

can be recovered are designated by Nevius, J., in Ten Eyck *v.* The Delaware and Raritan Canal Co., to be such as withdrawing business of transportation from its former channels, affecting the good will and custom of established stands for the purchase and sale of merchandise and produce, and changing the course and kind of business. But exemption from responsibility for injuries of this character rests upon general principles of law. It rests upon no grant of sovereign immunity, but extends to individuals as well as to agents of government. So a railroad company are not liable for a nuisance or the destruction of private property resulting from the use of locomotives, while used with due caution, not only because the use of the locomotive is authorized by law, but because the legislature will be presumed to have anticipated and authorized the hazards which result from their use, and because an individual under similar circumstances would not be liable for similar incidental injuries in the exercise of his rights. *Bord. and S. A. Turnpike Co.* v. *Camden and Amboy Railroad Co.*, 2 *Harr.* 314.

It is urged against the authority of the case of Ten Eyck *v.* The Delaware and Raritan Canal Co., that some of the grounds assigned in support of the opinion are untenable, and have been repudiated in subsequent authorities. This may be conceded, and yet the soundness of the decision not necessarily impeached.

It is insisted that it was erroneously assumed in that case that the defendants were a private corporation. It is conceded that the purpose for which the defendants were incorporated was to construct a public highway, a work essentially of a public character, and one which it was the peculiar province of the sovereign power itself to furnish, and in this sense it may be said truly that the defendants were incorporated for a public purpose. But they are not a public corporation, in the legal sense of that term.

Public corporations are such as are created for political purposes. They are invested with subordinate legislative

powers, to be exercised for local purposes connected with the public good. Their powers are subject to the control of the legislature, and the charter of such incorporations may be altered or repealed at the pleasure of the legislature. But a corporation is not public merely because its object is of a public character. " A bank created by the government for its own uses, and where the stock is exclusively owned by the government, is a public corporation. But a bank whose stock is owned by private persons is a private corporation, though its object and operation partake of a public nature, and though the government may have become a partner in the association by sharing with the corporators in the stock. The same thing may be said of insurance, canal, bridge, turnpike, and railroad companies. The uses may, in a certain sense, be called public, but the corporations are private equally as if vested in a single person. 2 *Kent's Com.* 305; *Angell & A. on Corp.,* §§ 14, 30–36; *Bonaparte* v. *Camden & Amboy Railroad Co.,* 1 *Bald. R.* 222. This is clearly the American doctrine, though a different classification appears to be adopted in England. *Grant, on Corp.* 9.

Over public corporations the legislature have an unlimited control to create, modify, or destroy them at pleasure. But the grant and acceptance of a private charter is regarded as a compact which the legislature cannot violate. 2 *Kent* 305; *Angell & A. on Corp.,* § 31. It may well be doubted whether these defendants would be willing to claim the privileges of public corporators, if at the same time they are made subject to all the conditions of the character they claim.

But, admitting that the defendants are strictly a public corporation, if the powers conferred authorizing the execution of the work in question were not, strictly speaking, conferred for the public benefit, if the grant was a special franchise, made as well for the private advantage of the corporators as for the public good, they are equally liable

for injuries inflicted as if they were a private corporation. *Bailey* v. *The Mayor of New York*, 3 *Hill* 531.

. Again, it is said that the view adopted in Ten Eyck *v.* The Delaware and Raritan Canal Company, that the state could not compel the company to construct the canal, but that the company might abandon the work at their pleasure, is erroneous. The position is not at all material to the conclusion at which the court in that case arrived, nor has it been relied upon in the present case as the ground of decision. The English authorities certainly show that a railroad company may be compelled to construct their road as authorized by the charter. And regarding the charter as a contract between the government and the corporators, it seems a dictate of sound principle, that the company, having accepted the charter, should be compelled, in fulfillment of their part of the contract, to carry the work into effect.

But it is further insisted that the injury of which the plaintiff complains is remote and consequential, and therefore of a character for which the defendants cannot be held responsible; that no action would lie for the injury, even if occasioned by an individual and without authority of law. Whether the injury is remote and consequential, is a conclusion of law upon the facts stated in the declaration. The demurrer admits only the facts that are well pleaded. This objection was raised and overruled in the case of Ten Eyck *v.* The Canal Co., and if in any case it might be urged effectually, it would seem to apply in that case. There the injury complained of was the building of a wall by the defendants in and along the Raritan river, by which the channel of the river was contracted and rendered less capable of discharging large bodies of water, by reason whereof the plaintiff's land, lying on the opposite side of the river, in times of freshets was subjected to inundation, and the soil thereby washed away. The injury complained of is clearly consequential, and there are certainly authorities which in

this aspect appear to conflict with the authority of that case. But whatever force the objection is entitled to under the circumstances of that case, it can have no applicability to the case before the court. The complaint here is not of a remote or consequential injury resulting from the construction of the road of the defendants, but of a direct and immediate injury occasioned by the defendants' acts. The plaintiff does not complain, as in the case of Ten Eyck, that by reason of the act of the defendants, he is injured by the operation of freshets, or as in the case of *Sinnickson* v. *Johnson*, 2 *Harr.* 129, that by the act of the defendant the tides are prevented from flowing freely, whereby the sluice gates are obstructed, and consequently the water prevented from flowing freely from the plaintiff's lands. But the complaint is, that the defendants have constructed an embankment in an eddy and creek's mouth, in which the plaintiff has a right of storing, landing and rafting lumber for the use of his said mill, so that the water is prevented from flowing in its accustomed channel, and the plaintiff deprived of the full enjoyment of his privilege. The property injured is incorporeal, a mere right in the land of another, but the injury to that right is the direct and immediate consequence of the acts of the defendants. In no proper sense can the damages sustained by the plaintiff be denominated as remote or consequential.

The only remaining ground of defence is presented by the second plea of the defendants, viz., that the water flowing in the creek's mouth is the navigable water of the river Delaware, a public navigable river under servitude to the public interests, the regulation of which is vested in the sovereign power.

This objection appears to be fully met and decided by the cases of *Sinnickson* v. *Johnson*, 2 *Harr.* 129, and *Crittenden* v. *Wilson*, 5 *Cowen* 165. In the former case, moreover, the act was passed for the purpose of improving the navigation of the stream, and direct authority to do the

act complained of was given. Here the improvement of the navigation of the river was not within the contemplation of the legislature, and no authority for that purpose was given. The plea might be available as a defence to an indictment or an action for a nuisance in obstructing the navigation of the river, but it is not perceived that it constitutes any answer to the plaintiff's cause of action.

The demurrer to both pleas is well taken. The matters set forth, alone or collectively, constitute no defence to the action. The plaintiff is entitled to judgment.

CITED *in Quinn* v. *City of Paterson,* 3 *Dutch.* 36; *Trenton Water Power Co.* v. *Raff,* 7 *Vr.* 340, 342.